No. 20,677.

BEN GEHLENBERG, *Appellant,* v. J. O. HARTLEY et al., as THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SA-LINE, and M. D. ROSS, as Trustee, etc., *Appellees.*

SYLLABUS BY THE COURT.

1. HIGHWAY—*Records of Inferior Tribunals—Collateral Attack.*  The general rule that silence of the record of a tribunal of inferior juris-diction on a jurisdictional point is fatal applies in cases of collateral attack to those jurisdictional facts only which the law directs the tribunal to enter upon its record.

2. SAME—To be sufficient against collateral attack, the recitals of records relating to the establishment of a road need not exhibit technical pre-cision.  They should be liberally construed, and however informal, should be upheld whenever enough appears to show with reasonable certainty that the requirements of the law were complied with.

3. HIGHWAY—*Meeting of Viewers—Valid Service of Notice Shown.*  Re-citals of the journal of the proceedings of the board of county com-missioners in establishing a road, and of the road record, considered, and held to show valid service of notice of the meeting of viewers.

4. HIGHWAY—*Report of Viewers, Survey and Plat Recorded—Road Prima Facie Established.*  Under the provisions of section 6, chapter 108, Laws of 1874, providing that when the viewers' report, the survey and the plat of a road have been recorded pursuant to order of the board of county commissioners, "from thenceforth said road shall be considered a public highway," the record indicated is *prima facie* evi-

dence that the road was legally established, and a landowner attacking collaterally the existence of the road has the burden of establishing the nonexistence of jurisdictional facts.

5. SAME—*Discrepancies in Road Record—Not Fatal.* Discrepancies in the road record regarding the time and place of the meeting of the viewers considered, and held insufficient to impair the *prima facie* validity of the proceedings.

6. SAME—*Road Lawfully Opened.* The evidence considered, and held sufficient to sustain the finding that a road was opened in fact by travel within seven years from the time it was established.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed May 12, 1917. Affirmed.

*David Ritchie,* and *G. A. Spencer,* both of Salina, for the appellant.

*W. B. Crowther,* county attorney, for the appellee; *F. B. Bristow,* and *L. W. Hamner,* both of Salina, of counsel.

The opinion of the court was delivered by

BURCH, J.: The action was one by a landowner to enjoin the board of county commissioners from opening a road. An injunction was denied, and the plaintiff appeals.

The road was established in October, 1888. The road record recites in regular order all the statutory steps for the location of a road. The statute then in force contained the following provision relating to notice of the meeting of the viewers:

"It shall be the duty of at least one of the petitioners to cause six days' notice to be given in writing to the owner or owners, or their agents, if residing in the county, or if such owner be a minor, idiot or insane person, then to the guardian of such person, if a resident of the county, through whose land such road is proposed to be laid out and established, and also six days' notice to the county surveyor, of the time and place of meeting, as specified in the notice of the commissioners. Copies of said notice to owners of lands, with affidavits of service attached, shall be filed in the county clerk's office before said road shall be established." (Laws 1874, ch. 108, § 4; Gen. Stat. 1889, ¶ 5477.)

The original affidavit of service of this notice is not abstracted. The journal of the board of county commissioners contains the following recital:

"And Whereas it further appears to the satisfaction of the board that H. C. Davis, one of the petitioners, did cause six days' notice in writing to be given to each of the owners of the land through and over which said road is proposed to be located, and that a copy of said notice with

affidavit of service attached, is now on file in the office of county clerk. Upon due consideration no legal objection having been offered against the establishment of said road and believing the same to be of public utility, it is ordered that the viewers' report of view be approved, and that said road be located as a public highway in accordance therewith, full record thereof to be made in the county road record and plat as Road No. 553, and the trustees of Greeley and Smoky Hill townships to be notified to cause the same to be opened to public travel."

The road record contains the following recital:

"Also, upon said 10th day of October, 1888, there was presented to said county board, the affidavit of H. C. Davis, one of the petitioners aforesaid, setting forth that due notice of the location of said proposed road, together with date of meeting of the viewers, as per published notice of county clerk, had been served upon each of the persons noted below, who as owners, agents or guardians, were all the persons, through whose premises said road is proposed to be located, to wit: Wm. E. Grier, owner, [description of land]; Mrs. A. T. Grier, owner, [description of land]; James Sharp, owner, [description of land]; A. M. Claflin, Agt., [description of land]."

The plaintiff's land is that for which the road record shows A. M. Claflin was agent, and was owned at the time by W. C. Glidden. The plaintiff argues that the order establishing the road was void for want of jurisdiction, because the record contains no finding by the board of county commissioners that Glidden was a nonresident of the county and no finding that Claflin was his agent.

The attack on the proceeding is collateral. The general rule is that silence of the record of a tribunal of inferior or limited jurisdiction on a jurisdictional point is fatal. But this rule applies, in cases of collateral attack, to those jurisdictional facts only which the law directs the tribunal to enter upon its record. There is nothing in the statute of 1874 requiring the board to make or to enter of record either of the findings which the plaintiff suggests before jurisdiction to act on the viewers' report attaches.

One of the petitioners must cause notice of the view to be given to the persons whose land will be affected and must make affidavit of service of the notice. Proof of service may be filed at any time before the road is established. When filed it is filed with the county clerk. When the report of the viewers comes in the course to be pursued is prescribed by the statute:

"It shall be the duty of the commissioners, on receiving the report aforesaid, to cause the same to be read before their meeting; and if said

report is favorable, and no legal objections appear against said report, and they are satisfied that such road will be of public utility, they shall order said road [report], survey and plat to be recorded, and from thenceforth said road shall be considered a public highway, and the commissioners shall issue their order to the trustees of the respective townships in which such road is located, directing them to cause the same to be opened for the public travel." (Laws 1874, ch. 108, § 6.)

It is plain that jurisdiction to act on the viewers' report depends on valid service and not on a finding made after service that due service was made. A copy of the notice with the affidavit of service lies in the county clerk's files, as a summons with the sheriff's return lies in the files of the clerk of the district court in an ordinary action. The commissioners will, of course, satisfy themselves that proper notice has been given before establishing the road. They may do this, however, in any way they choose. They may accept the affidavit of service. Whatever they do in this regard is confirmatory only, and adds nothing to the service. Should the commissioners neglect to review the action of the petitioner in giving notice, and proceed to establish the road, their jurisdiction would depend on the character of the service. If that were valid, the road would be legal.

The plaintiff says the record as it stands does not show notice served on Glidden or any one for him. The court disagrees with the plaintiff. The journal contains a finding that notice was served on each of the owners of land affected by the proceeding, and that proof of service was on file with the county clerk. This finding covers every material fact essential to valid service. The road record recites that the affidavit of service set forth that due notice had been served on named persons, who, as owners or agents, were all the persons whose premises were affected. One of the persons named was A. M. Claflin, agent, with a description of Glidden's property appended. The recital fairly states that notice was served on A. M. Claflin, as agent for the described property, which is sufficiently specific.

"In determining the sufficiency of the records of inferior tribunals and public boards, to express their purposes or to preserve a memorial of their transations respecting matters within their jurisdiction, technical precision should not be required; on the contrary, they should be liberally construed. They are not usually drawn by persons possessed of professional knowledge or skill in such matters; the law does not con-

template that such tribunals or boards shall be constantly attended by persons having such knowledge or skill, but rather, that their duties will be performed, at least generally, without such assistance. To subject them to the test of technical precision would, in most instances at least, defeat the object sought to be attained by the legislature in creating inferior tribunals and public boards; and therefore, however informal their records may be, if enough appears to show with reasonable certainty that the requirements of the law have been substantially complied with, their proceedings should, upon grounds of public policy, if for no other reason, be sustained." (*Lewis et al. v. Laylin et al.*, 46 Ohio St. 663, 666.)

Besides what has been said, the record in the present case would be sufficient to oblige the plaintiff to prove nonexistence of jurisdictional facts, if there were no reference in the record to service of notice on anybody. Section 6 of the statute quoted above provides that the commissioners shall order the viewers' report, the survey and the plat to be recorded, and that "from thenceforth said road shall be considered a public highway." This is a legislative declaration, that upon the recording of the report, survey and plat, the road shall be regarded, *prima facie*, as legally established. The declaration is unqualified, binds landowners, public officials and the courts, and casts upon any person contesting the road proceedings the burden of establishing their invalidity.

The provision of the statute under consideration was copied from a statute of the state of Ohio enacted in 1831, which received judicial interpretation by the supreme court of Ohio at least as early as 1861. In the case of *Anderson and wife v. Commissioners of Hamilton Co.*, 12 Ohio St. 635, the court said:

"The objections to the record are based on the assumption that to give such a record validity, it should show on its face, or be supported by proof, that there was a petition signed by at least twelve freeholders of the county, and notice, as prescribed by the statue. That there are cases in which the proceedings of tribunals or bodies of special and limited jurisdiction, should show on their face, or be sustained by proof, that the prescribed requisites to the exercise of the power conferred upon them have been complied with, is certainly very true. But, looking to the subject matter, and the provisions of the statute, we think that the record which the statute directs, must be regarded, in any collateral proceeding, as evidence of the establishment of the road. If the report, survey and plat be recorded, as directed by the statute, the presumption that it has

been properly and regularly done will arise, and the record will, in the language of the statute, show that the road is to be considered a public highway." (p. 642.)

In the case of *McClelland v. Miller,*. 28 Ohio St. 488, decided in 1876, the court referred to the Anderson case, and said:

"The same class of objections were made to the admission of the record, that are made in the case at bar, the law being that of 14th March, 1831, the same we are now considering. It was there claimed that the record must show on its face, or be supported by proof, that there was a proper petition and notice duly given; but the court says that the record which the statute directs, must be regarded, in any collateral proceeding, as evidence of the establishment of the road. . . . What is to constitute the record of the road appears to be this: When the viewers have reported, if the commissioners are satisfied that the road will be of public utility, 'they shall cause said report, survey and plat to be recorded, and from thenceforth said road shall be considered a public highway, and the commissioners shall issue their order directing said road to be opened.' Swan, ed. 1841, p. 798, § 4. Hence, as Gholson says in 12 Ohio St. 642: 'If the report, plat and survey be recorded, as the statute directs, the presumption that it has been properly and regularly done, will arise.'" (pp. 498, 500.)

These decisions are manifestly sound.

In the early case of *Willis v. Sproule,* 13 Kan. 257, this court said:

"After a careful consideration of the question we have come to the conclusion that whenever the records and files of the board of county commissioners purporting to establish a county road are regular in form, and contain everything which the statutes require to be preserved and kept in such cases, such records and files will prove, *prima facie* at least, that such road has been legally established and has a legal existence, and therefore that there is no necessity in the first instance to resort to evidence *aliunde* to prove the legal existence of the road. Such ought to be the law, and especially so where the existence of the road is attacked collaterally, as in this case. The strongest reasons, and some very high authority, sustain this view of the law. (*Anderson v. Comm'rs of Hamilton Co.,* 12 Ohio St. 635, 642; *Beebe v. Scheidt,* 13 Ohio St. 406 418.)" (p. 264.)

If the court had examined more closely the Ohio decisions cited, it would have discovered that they were based upon and were interpretative of a statute, and of a statute which the legislature of this state had adopted verbatim.

It is true that section 4 provides that a road shall not be established until a copy of the notice to landowners, with proof of service, has been filed in the county clerk's office. The re-

quirement is jurisdictional. But files in the county clerk's office, and particularly files a third of a century or half a century old, may be misplaced or lost or destroyed. The rule is that absence of documents from the files is not conclusive evidence that they were never filed. (*The State, ex rel., v. Railway Co.*, 95 Kan. 22, 147 Pac. 801.) Section 6 anticipated the rule, and when the viewers' report, the survey and the plat have been recorded, everything essential to legal establishment of the road shall be considered as having been done. The statute is a wholesome one, and is still the law of this state. (Gen. Stat. 1915, § 8760.) It does not appear to have occupied the attention of the court in any of its previous decisions.

The plaintiff relies on the case of *Comm'rs of Chase Co. v. Cartter*, 30 Kan. 581, 1 Pac. 814. In that case a direct attack was made on the road proceedings. A petition in error was filed in the district court to reverse the action of the commissioners in establishing the road. The question was whether or not that which was brought up to the district court was sufficient to authorize the commissioners to act. The soundness of the decision from that standpoint need not be discussed. The plaintiff also cites the case of *Comm'rs of Wabaunsee Co. v. Muhlenbacker*, 18 Kan. 129. In that case the action of the commissioners was directly attacked by proceeding in error in the district court. The syllabus expressly limited the rule announced, respecting what the record should affirmatively show, to cases of direct attack. In this case the attack is collateral, and the record of the report, survey and plat is regular. The plaintiff did not offer to prove that Claflin was not in fact Glidden's resident agent, or that the circumstances were such that Glidden should have been served personally with notice. The plaintiff stood on the record, and the presumption from the record is that all the steps necessary to establish the highway were taken.

The record shows the viewers were instructed to meet at the post office in Salina on Friday, the 17th day of September, 1888, and proceed to view the road, and the record shows notice to that effect. The viewers' report shows that they met, pursuant to notice, at the lands of James Sharp, in Smoky Hill township, on the 7th day of September, 1888, and proceeded

to view the road. It is said the proceedings were void because of these variances.

The date in the viewers' report is evidently correct, and the date in the road record is evidently a clerical error of the deputy who made up the record. There was no such day as Friday, September 17, 1888. The 17th of September was Monday. The 7th of September was Friday, and no doubt the viewers met on that date, pursuant to notice. If this were not true, the record shows that the agent Claflin, on whom notice was served, was present when the road was viewed.

A common meeting place is appointed to bring the viewers and their assistants together and thus facilitate the view. Meeting at the designated place is not jurisdictional, and no landowner can complain unless he has actually been misled and deprived of an opportunity to present his claim. In this instance, the viewers met on land forming part of the site of the road, and the agent for the owner of the plaintiff's land was present.

Finally, it is said the road lapsed because it was not opened for public use within seven years after the time the order establishing it was made.

The road extends east and west and forms an extension of Crawford avenue in the city of Salina. It is one and one-half miles long and crosses the Smoky Hill river. Approximately a mile of the road is west of the river. The river was not bridged or fordable. If local history were carefully written, it would probably disclose that the promoters of the road had in mind securing a bridge across the river, but none was ever erected. The result was, the road was little used. About one-quarter of a mile east of the river a gate was maintained across the road, but the landowner on one side set his fence over and the road was opened and was traveled down to the gate, and was used somewhat down to the river. West of the river a fence beginning near the river and one-half mile long was never removed from the center of the road, which was sixty feet wide. There was positive proof, however, that the owner of land lying next to the river and one-quarter of a mile north of the road, used the road in 1894 for the purpose of hauling corn from his field, and did so for the express purpose of "trying to hold the road."

*In re* Moseley's Estate.

Whenever a road has been established, it is opened in fact when it is traveled. (*Webb v. Comm'rs of Butler Co.,* 52 Kan. 375, 34 Pac. 973.) After the lapse of so many years, neither very much nor very definite proof of use is to be expected, and the court regards that which was produced as sufficient. The road having been opened within seven years, subsequent non-user is not destructive of the public right. (*Eble v. The State,* 77 Kan. 179, 93 Pac. 803.)

The judgment of the district court is affirmed.