### MORNINGSIDE HOSPITAL & TRAINING SCHOOL FOR NURSES v. CARMICHAEL, County Treasurer.
### SAME et al. v. STATE.

Nos. 26612, 26613, Consolidated. Dec. 20, 1938.

Rehearing Denied May 2, 1939.

Saul A. Yager and Monnett & Savage, for plaintiff in error.

Henry S. Johnston and Phil W. Davis, Jr., for defendants in error.

WELCH, J. This is an appeal from the district court in two cases consolidated therein for trial.

The controversy grows out of the action of the board of county commissioners in ordering certificates of error to issue in July, 1931, the effect of which was to strike the property of Morningside Hospital and Training School for Nurses from the tax rolls for the years 1928, 1929, and 1930. The hospital had filed affidavits and complaints wherein it was claimed that the property was exempt from taxation.

The trial court found that the property involved was legally liable for taxation; that in fact and in law no ground of exemption from taxation existed, and that the orders of the board of county commissioners were invalid and could not be sustained. Judgment was rendered accordingly, and the taxpayer prosecutes this appeal.

One of the questions presented here is whether the statutes require a showing of good cause for not having presented the question of exemption to the county board of equalization.

The record shows that the managing officers of the hospital had full knowledge that the property had been on the tax rolls for several years prior to 1928, and taxes thereon paid, during which time no exemption had been allowed. In the early part of 1928 the valuation of same was raised considerably, after improvements to the property, and after full discussion of the new valuation between the county assessor and the managing officer of the hospital, at which time no objection to the valuation was made and no claim of exemption suggested.

No taxes were paid for 1928, 1929, and 1930, and no claim of exemption was made until January, 1931, when affidavits of erroneous assessment were filed with the board of county commissioners, and thereafter a "complaint," and upon July 6, 1931, the board of county commissioners ordered the issuance of the certificates of error. Upon the refusal of the county treasurer to accept such certificate as payment of the taxes, these separate suits were brought, one to compel performance on the part of the treasurer, the other to enjoin compliance and annul the order of the board and cancel the certificates.

The affidavits filed by the taxpayer did not in any manner purport to show good cause for not having attended the meetings of the county board of equalization. The order of the board does not purport to show that the board of county commissioners in any way inquired into the question of good cause for not having attended the meetings of the board of equalization.

The hospital asserts that the order of the board is a final adjudication of the question of the exemption of its property for the years involved, in that the board of commissioners in the making thereof acted in a judicial or quasi-judicial capacity and no appeal was taken from the order so made. Without expressing an opinion here on the question of the possible finality of any order which reflects upon the face of the proceedings of the board full power and jurisdiction to enter the same, it is our view that the entire proceedings and order shown here affirmatively show lack of power in the board to make the order and issue the certificates of error.

In arriving at such conclusion we have broadly in mind the entire statutory scheme and system of assessment of property for purposes of ad valorem taxation, the levy of the tax thereon and the method of expenditure of the public funds thereby raised and to be raised.

It is the privilege and duty of the owner of property to render to the county assessor a return thereof for purposes of taxation as of January 1st of the calendar year. Ample and specific means and methods for such rendition are specifically provided in the first four months of such year. If the owner fails to so render the same within the given time, it becomes the duty of the

assessor to assess the same at its fair valuation for such purpose.

There is provided by statute a county board of equalization whose duty it is to examine the assessments so made and which is required by statute to remain in open session beginning the fourth Monday in April, and continuing thereafter for such length of time that all property owners ordinarily have ample time and opportunity to adjust and correct any improper assessments. The statutes provide adequate means and methods whereby any property owner may appear before such board and obtain an adjustment of any improper assessment, and may appeal from the order of such board. Thereafter the assessments so made and adjusted are certified to the State Board of Equalization for its action in fixing final valuations for purposes of taxation, after which such final valuations are certified to the county excise board, which is charged by the statutes with the specific and mandatory duty of calculating the rate of tax levy required upon such final valuation of property which will be necessary to finance the requirements of the several subdivisions of government. These specific and final valuations are used as a basis of financing the appropriations which the excise board by the statutes are required to make.

Thereafter the several subdivisions of government are authorized by law to contract indebtedness and issue warrants against such appropriations so financed, and persons dealing with such subdivisions of government are led to rely upon such method of financing to support their contracts and for payment of their warrants.

When a property owner permits his property and the specific valuation placed thereon to become a part of the total valuation used for financing the appropriations and expenditures, there is strong reason why he should not thereafter be permitted to withdraw that valuation from the tax rolls, thereby frequently forcing upon the other taxpayers an additional tax burden and a greater amount than they would have been compelled to pay had the property owners obtained the correction of his assessment in the time and manner provided and required by statute, and in all cases resulting in a disturbing maladjustment of the state's fiscal policy specifically provided by statute. In this case the total tax involved amounts to well over $30,000, and it is easy to visualize the many evil results which would attend a considerable activity of this kind.

But it may be properly said that there are instances where a property owner, through no fault of his, chiefly through ignorance of facts and occasionally otherwise, has failed to attend the meeting of the county board of equalization, in which case a great inequality would be visited upon him and it would be manifestly unjust to require him to pay taxes upon an improper valuation or upon property which is exempt by law from taxation. The Legislature, recognizing this class of cases, provided by section 12642, O. S. 1931, that an adjustment might be had upon application to the board of county commissioners before payment of taxes. The statute provides as follows:

"The board of county commissioners of each county is hereby authorized to hear and determine allegations of erroneous assessments, mistakes or errors made in assessing or preparing the tax rolls, or in the description of the land or other property, before the taxes have been paid, on application of any person or persons who shall show by affidavit good cause for not having attended the meeting of the county board of equalization for the purpose of correcting such error, mistake or difference. * * * It shall be the duty of the board of county commissioners to correct such error, and the county clerk, upon the order of said board, shall issue a certificate of error to the county treasurer, stating the amount of such correction, which amount the treasurer shall deduct from the original assessment or assessed amount."

We think it is obvious from such statute that the Legislature did not grant the power to the board of county commissioners to strike from the tax rolls "property exempt from taxation" except in the class of cases where good cause is shown for not having attended the meeting of the county board of equalization.

Plaintiff in error asserts that it is not necessary to show by affidavit good cause for not having attended the meeting of the county board of equalization, and that such provision of section 12642, supra, is directory only, citing City of Enid v. Champlin Refining Co., 112 Okla. 168, 240 P. 604. It is true that therein this court held that the contents of the affidavit were not jurisdictional. In that case the court held that the failure to show by affidavit good cause, etc., did not render the action of the board of county commissioners void. We observe, however, that it was therein shown that good cause in fact did exist for the owner of the property not having attended the meeting of the county board of equalization. There the property owner had rendered his property in accordance with law and the county assessor had arbitrarily changed the same without notice, and there was therefore no cause for the property owner to suppose

that there was any reason for it attending the meeting of the county board of equalization. Furthermore, the property was not taxable in the jurisdiction wherein the same was sought to be taxed, and the property owner, without fault on its part, had no knowledge of the fact that the taxing officials were illegally assessing the property and was wholly justified in assuming that such officers would perform their duties in a legal manner.

Although the Champlin Case contains language which, if taken alone and without regard to the facts and the general context of the opinion, lends strength to the contention that the showing of good cause is necessary only in the discretion of the board of county commissioners, we are of the view that when full force is given to the facts that therein there did exist the best of causes for not having attended the meeting of the county board of equalization, it cannot then be said that the opinion is in point in this case. Here no good cause is reflected in the proceedings of the board, and it is not shown that such good cause did in fact exist.

In Cohens v. Virginia, 6 Wheat. 399, 5 L. Ed. 257, Chief Justice Marshall wisely said:

"It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question before the court is investigated with care and considered in its full extent, and other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

And so we think that the most that may be said of the Champlin Case which in any wise applies to the facts here may be found in the syllabus thereof, wherein it is held that the showing of good cause may be omitted from the affidavit itself without rendering the order of the board of commissioners void.

But we have here a far different state of facts. Plaintiff in error here at all times knew that its property was assessed for the years involved. It was at all times possessed of the knowledge of all the facts upon which depended the question of whether the property was exempt, and the entire proceedings of the board fail to reflect otherwise, and fail to disclose that the question of whether or not the plaintiff in error had good cause for not having attended the meetings of the

county board of equalization in any of the years had been inquired into by the board of commissioners. As we have heretofore stated, the existence of good cause for not having attended the meetings of the county board of equalization is an essential prerequisite to the power granted to the board of county commissioners to act in such cases, and although under the Champlin Case it appears that it is not essential that it appear in the affidavit, we have no doubt that such good cause must be present and the proceedings of the board of county commissioners must disclose that such question was considered by such board before one will be heard upon the legal proposition that the order is final, conclusive, and not subject to equitable attack as here made.

Our conclusions herein reached are fully supported by the case of Buchner v. Board of Commissioners of Hughes County, 166 Okla. 274, 28 P.2d 535, wherein it is held in the syllabus as follows:

"Where a taxpayer has personally rendered his property for assessment and voluntarily valued his property at a given figure, and four years thereafter files an affidavit of erroneous assessment with the board of county commissioners seeking to have said assessment reduced, and where it is shown that he has failed to apply to the board of equalization as prescribed by section 12660, O. S. 1931 (sec. 9966, C. O. S. 1921), and has not availed himself of the remedy prescribed in section 12665, O. S. 1931 (9971, C. O. S. 1921), for relief from an alleged illegal tax, the board of county commissioners is without authority to enter an order canceling the assessment and ordering a reassessment."

It is apparent that in that case the board of commissioners did not have power to order a change in the assessment, largely for the reason that the property owner had not shown good cause for not having attended the meetings of the county board of equalization. See, also, State v. State ex rel. Shull, 142 Okla. 293, 286 P. 891, wherein the methods for redress to the property owner are discussed. See, also, Ivester v. State ex rel. Gillum County Attorney et al., 183 Okla. 519, 83 P.2d 193, wherein it is held that the taxes levied are fixed liabilities, and the opinion discusses the necessity of showing "good cause" when applying to the board of county commissioners for relief, under the statute under discussion. See In re Moore, 182 Okla. 330, 77 P.2d 676, for a discussion of the general intent of the assessment laws to attain finality of assessments before making tax levies.

Whatever might be the legal effect of an unappealed and final order of the board of county commissioners in proceedings under

this statute, which recites or reflects that good cause was shown, as concerns the question of a subsequent attack thereon, we conclude that an order and proceedings as here, which do not so show, are subject to the present attack upon the ground that the board was wholly without power to so act.

In its order and judgment the trial court perpetually enjoined the property owner from presenting any further claim of exemption from taxation for the years 1928 to 1934, inclusive, to the board of county commissioners. At the time the order of the board was made, assessments for the years 1928, 1929, and 1930 only were involved. The issue here was whether or not the order of the board striking the property from the tax rolls for the years 1928 to 1930, inclusive, was valid. Whether the property was erroneously assessed for subsequent years was a question to be passed upon by the assessor or proper board.

In so far as the trial court's order and judgment relates to the years 1928, 1929, and 1930, the same is affirmed; as it relates to other years' assessments, the same is reversed.

OSBORN. C. J., BAYLESS, V. C. J., and CORN, GIBSON, DAVISON, and DANNER, JJ., concur. RILEY, J., absent. HURST, J., disqualified.