TULSA EXCHANGE CO. et al. v.
PARKINSON, County Treas.

No. 30778. March 30, 1943.

*136 P. 2d 694.*

312

Chas. L. Yancey, Kavanaugh Bush, and Charles P. Gotwals, Jr., all of Tulsa, for plaintiffs in error.

Dixie Gilmer, County Atty., and William M. Taylor, Asst. County Atty., both of Tulsa, for defendant in error.

WELCH, J. Plaintiffs bought the land involved in April, 1937. In July, 1937, upon their application, the board of county commissioners reduced the assessed valuation of the land for ad valorem tax purposes for the years 1930 to 1933, inclusive, and issued certificates of error in conformity with its order of reduction, plaintiffs then paying the difference. In 1941 the county treasurer caused his records to show the tax represented by the certificates of error to be and remain unpaid. Such action was taken upon the theory that the order of the county commissioners and the certificates of error are void. This action seeks to have the county treasurer cause his records to show such taxes paid.

Plaintiffs' theory is that the county commissioners acted under authority of section 12642, O. S. 1931, and Barry v. Board of County Commissioners of Tulsa County, 173 Okla. 645, 49 P. 2d 548.

Many questions of law are argued in the respective briefs, only one of which we consider it necessary to decide.

Section 12642, O. S. 1931, provided:

"The board of county commissioners of each county is hereby authorized to hear and determine allegations of erroneous assessments, mistakes, or errors made in assessing or preparing the tax roll or in the description of land or other property, before the taxes have been paid, on application of any person or persons who shall show by affidavit good cause for not having attended the meeting of the county board of equalization for the purpose of correcting such error, mistake or difference . . . ."

Defendant urges, in effect, that this record discloses that the board was without power to make the order correcting assessment because of failure to show good cause for not having attended the meetings of the county board of equalization as required by the above section, and that seems to be the theory adopted by the trial court in denying mandamus.

During the years 1930-33 the land was owned by persons named Travis. Subsequent thereto Exchange National Company foreclosed mortgage on same and purchased at sheriff's sale. It sold to one Green, and plaintiff Smith pur-

chased from Green. Plaintiffs are interested herein by reason of warranties contained in deeds whereby they conveyed to others.

The affidavits of erroneous assessment, six in number, were executed by plaintiff Smith and are all in the following form, omitting tabulations of values, descriptions of property, jurat, etc.:

"Personally appeared before the undersigned authority in and for said County, Elizabeth H. Smith, who, being duly sworn, deposes and says: That the following described property was erroneously assessed. (description)

"The original valuation on all above described lots for the year 1930 totals $14,340. I respectfully request that your board reassess said lots at a valuation of $7170. for the year 1930. Said valuation of $7170. is a fair cash value for the above described lots. Therefore making an erroneous assessment against me on a valuation of $7170.00 for taxes amounting to $360.83 and ask that the same be refunded or stricken from rolls, as the law provides."

On each affidavit is indorsed the following:

"Done by order of the Board of County Commissioners July 14, 1937, as recorded in their Journal No. . . . . . . at page . . . . . . .

"Andy Stokes, County Clerk

"M. Pendleton, Dep. (Seal)"

These instruments appear to have been acted upon as one instrument and the journal of the county commissioners shows the following with relation thereto:

"Motion by Commissioner Hopkins, seconded by Commissioner Miller, that the affidavit of erroneous assessment filed by Elizabeth H. Smith, covering real estate in Travis Park Addition to the City of Tulsa, Oklahoma, for the years 1930 to 1933, inc., be and the same is hereby approved, that is a reduction of $1800 is granted in taxes, and the county clerk is hereby instructed to issue a certificate of error covering same. Upon roll call, all members voting in the affirmative, motion was by

Chairman declared carried. Miscl. No. 35,402."

It is to be observed that neither the affidavits nor the proceedings of the board reflect good cause for not appearing before the county board of equalization.

Evidence was adduced at the trial of this action on the question of such good cause.

The plaintiff Smith testified that she told the county commissioners that she did not own the property at the time of the assessments and for that reason she had no occasion to appear and did not appear before the county board of equalization; that she did not know whether the Travises, who then owned it, made any such appearance before that board.

Mr. Nix, representing the Tulsa Exchange Company, testified that after the affidavits for erroneous assessments were filed, he talked with one of the county commissioners and told him, in substance, that lack of ownership at the time of assessment was the reason this plaintiff made no appearance before the equalization board; that he did not attend the meeting of the board of county commissioners at the time the purported order correcting assessment was made.

The affidavits and orders of the board of county commissioners do not reflect good cause for not having attended the meetings of the county board of equalization for the years involved, and by reason thereof such proceedings may not be relied upon as final and conclusive on the jurisdictional question involved. Morningside Hospital & Training School for Nurses v. State, 185 Okla. 48, 89 P. 2d 958.

The evidence here clearly shows the facts relied on to show good cause for the action of the board of county commissioners in entertaining the plaintiffs' affidavit. We agree that Mrs. Smith has good cause for not appearing before the county board of equalization for the years involved because it is ob-

vious to all that she had no right or interest in the land at the time, and did not buy the land until several years after such boards were in session to hear the complaints of interested parties.

The board of equalization hears complaints only of persons beneficially interested, and the provision in section 12642, O. S. 1931, to the effect that the board of county commissioners may entertain complaints ". . . on application of any person or persons who shall show good cause for not having attended the meeting of the county board of equalization for the purpose of correcting such error . . . " means that good cause must be shown why the person beneficially interested at the time when the appearance should have been made for such purpose did not so appear.

The evidence here discloses that no good cause was shown to the board of county commissioners why the Travises did not appear before the county board of equalization for the years involved. As they were the owners of the land at that time, and the persons beneficially interested in the land and the assessments, they are the persons who had the duty to appear before the proper board at the proper time. And before the county commissioners could correct any assessment after the tax rolls had been made up, good cause must have been shown why they did not so appear before the equalization board.

We do not decide other questions presented. Affirmed.

GIBSON, V. C. J., and BAYLESS, HURST, and DAVISON, JJ., concur. CORN, C. J., concurs in result. RILEY and OSBORN, JJ., concur in conclusion. ARNOLD, J., absent.