PARKINSON, County Treas., v. STATE ex rel. THIEMAN.

No. 31074.   June 8, 1943.

Rehearing Denied July 6, 1943.

Application for Leave to File Second Petition for Rehearing Denied October 23, 1945.

*162 P. 2d 551.*

Dixie Gilmer, County Atty., and Wm. M. Taylor, Asst. County Atty., both of Tulsa, for plaintiff in error.

Doerner, Rinehart & Stuart and Jack Langford, all of Tulsa, for defendant in error.

DAVISON, J.   On the 6th day of July, 1937, the board of county commissioners of Tulsa county approved the verified application of the then owners

of certain real estate situated in Tulsa county for a reduction in the assessment of such land for the years 1928-1935, inclusive, and made the order authorizing certificate of error changing such assessments for ad valorem purposes.

Thereafter, the county treasurer of Tulsa county received and accepted payment of ad valorem taxes on the property in accord with the reduced valuation and indicated on his records that the taxes had been paid in full for the years above mentioned.

Subsequent to the decision of this court in Ivester v. State, 183 Okla. 519, 83 P. 2d 193 (decided in 1938), wherein we declared article 14, ch. 66, S. L. 1937, which purported to authorize a reduction of the assessed valuation of property for 1936 and prior years, to be in violation of section 53, art. 5, of the Oklahoma State Constitution, the county treasurer caused his records to show as unpaid that portion of the taxes previously considered canceled by reason of the certificate of erroneous assessment. In making this change in the records the treasurer proceeded on the theory that in authorizing the reduction in the assessed valuation of the property the board of county commissioners was acting under article 14, ch. 66, S. L. 1937. If no other authorization for the action exists, his action in treating the reduction in assessed valuation as a nullity was correct, since, as a general rule, rights cannot be acquired under an unconstitutional statute. State ex rel. Tharel et al. v. Board of County Commissioners of Creek County et al., 188 Okla. 184, 107 P. 2d 542.

F. P. Thieman, the present owner of the property, conceived the theory that the action of the board of county commissioners in making the reduction in valuation could be justified upon consideration of the provisions of section 1, ch. 19, S. L. 1916 (sec. 12642, O. S. 1931), repealed by section 14, ch. 115, S. L. 1933. We have held the effectiveness of the foregoing act survived its repeal as to assessments for years preceding the repeal by virtue of our State Constitution, article 5, sec. 54; Barry v. Board of County Commissioners of Tulsa County, 173 Okla. 645, 49 P. 2d 548.

Acting upon the theory indicated, Thieman, as relator, instituted this action in the district court of Tulsa county in the name of the State of Oklahoma against Joe T. Parkinson, the county treasurer of Tulsa county, to compel the defendant by writ of mandamus to treat the taxes for the years 1928 to 1932, inclusive, as satisfied in part by payment thereof in accord with the reduced valuation.

The defendant filed his answer joining issues and denying the existence of legal justification for the action taken by the board of county commissioners.

Upon trial of the cause in the district court the decision was for the relator as to the assessment for the year 1932. Relief as to prior years was denied upon consideration of the statute of limitations. The defendant appeals from the portion of the judgment adverse to him. In a separate appeal, 196 Okla. 87, 162 P. 2d 558, the relator attacks the portion of the judgment adverse to him. We shall continue to refer to the parties by their trial court designation.

An examination of the commissioners' proceedings as reflected by the record supports the view advanced by the county treasurer that the property owners were undertaking to obtain a reduction in taxes under the unconstitutional 1937 act. This conclusion is justified upon several considerations: First, the basic allegation in the application for reduction of assessment (styled by the applicants as protest) was:

"That said property was erroneously assessed in that it was assessed for more than its fair cash value during all of the above years."

This allegation follows and adopts in part the language of the 1937 act, supra, and was apparently suggested to the

pleader thereby. No corresponding language appears in the 1916 act. Second, the relief sought comprehended reductions in assessments for years subsequent to the repeal in 1933 of the 1916 act. Third, the certificate of error issued by the county clerk under authority of the order of the board of commissioners authorizing a reduction in assessment made the reduction contingent upon the payment of taxes under the new valuation within 60 days. The certificate provided:

". . . you will hold this certificate in abeyance for a period of 60 days from the date of the order of the board of county commissioners, and if during this period the taxes as above computed be legally tendered, then to render the above assessment as computed on your records; otherwise this certificate shall be null and void. . . . This certificate null and void after September 6, 1937."

The contingent effectiveness of the certificate of error was contemplated by the provisions of the unconstitutional act of 1937 but not by the 1916 act. The relator contends, however, that, even though the proceedings before the board of county commissioners were instituted with a view to obtaining relief under the unconstitutional 1937 act, the relief obtained was properly granted and can be justified under the 1916 act insofar as the taxes for the years 1928 to 1932, inclusive, are concerned.

Assuming without deciding that if the proceedings reflected a compliance with the 1916 act, the relief could be justified upon the theory indicated, we cannot approve the relief in this case because the conditions upon which the relief was obtainable under that act were not met in drafting and presenting the application to the board of county commissioners.

The 1916 act, supra, contemplates that the party applying to the board of county commissioners for relief thereunder shall show by affidavit good cause for not having attended the meeting of the county board of equalization for the purpose of correcting the error, mistake, or difference constituting the basis for the relief sought before the board of county commissioners.

In this case no such affidavit was presented, nor does anything appear in the record of proceedings indicating that a showing of good cause for such nonappearance in lieu of the affidavit was made.

In City of Enid v. Champlin Refining Co., 112 Okla. 168, 240 P. 604, we held that the requirement that good cause for nonappearance be shown by affidavit was directory and that the failure to show the same in that manner did not nullify the action of the board. However, in Morningside Hospital and Training School for Nurses v. Carmichael, 185 Okla. 48, 89 P. 2d 958, we held that good cause for not having appeared before the board of equalization must be shown and that such showing should be reflected by the record of the proceedings before the board of county commissioners. We therein said in paragraphs 1 and 2 of the syllabus:

"Before one may apply to the board of county commissioners for correction of an assessment of property for purposes of ad valorem taxation under section 12642, O. S. 1931, he must show good cause for not having appeared before the board of equalization to procure the relief sought. (Note: section 12642, O.S. 1931, is the 1916 act.)

"Where the order and proceedings of the board of county commissioners do not reflect that the party applying for relief under section 12642, O. S. 1931, showed good cause for not having appeared before the board of equalization for the relief, such order is subject to subsequent attack in a proceeding where the same is relied upon by the opposing party as final and conclusive. And where it is not therein shown that the party procuring the order had good cause for not having appeared before the board of equalization, the said order of the board of county commissioners will be declared invalid."

And in the body of the opinion we stated:

"We think it is obvious from such statute that the Legislature did not

grant the power to the board of county commissioners to strike from the tax rolls 'property exempt from taxation' except in the class of cases where good cause is shown for not having attended the meeting of the county board of equalization. . . .

"As we have heretofore stated, the existence of good cause for not having attended the meetings of the county board of equalization is an essential prerequisite to the power granted to the board of county commissioners to act in such cases, and although under the Champlin Case it appears that it is not essential that it appear in the affidavit, we have no doubt that such good cause must be present and the proceedings of the board of county commissioners must disclose that such question was considered by such board before one will be heard upon the legal proposition that the order is final, conclusive and not subject to equitable attack as here made."

See, also, Tulsa Exchange Co. v. Parkinson, 192 Okla. 311, 136 P. 2d 694.

We thus held that the existence of good cause was an essential prerequisite to the granting of relief under the 1916 act. As above stated, the record of the proceedings before the board of county commissioners is silent as to the existence of such good cause. The relator attempted to supply this deficiency in the record of the proceedings before the commissioners by submitting the oral testimony of a deputy court clerk who handled the clerical details of matters of this character for the board of county commissioners. The deputy testified in substance that she had no independent recollection in connection with this particular transaction of what showing, if any, was made before the board of county commissioners with reference to good cause for nonappearance before the board of equalization, but that generally the applicant was required to show good cause. Usually, she said, such showing was deemed sufficient if it established: (1) absence from the city, (2) sickness, or (3) that the applicant was not the owner of the property when the assessment was made. Obviously, the latter reason is wholly insufficient.

If it were acceptable, a landowner having no excuse whatever for nonappearance could create the basis of an excuse afterward by transferring the property on which taxes had been permitted to accumulate.

The county treasurer testified in substance that the practice in making reduction in assessed valuations, at the time the one herein involved was made, was for the landowner to go to the treasurer's office and procure a statement of the amount of taxes due, submit the matter to the county commissioner from his district who would O.K. the amount of reduction claimed by him to be proper, and that the matter would later be taken up by the board. He testified that only on rare occasions did the property owner appear before the board to make any showing.

No evidence was produced by the relator that a showing of "good cause" was made in this case.

Under the proof offered in this case we are convinced that the reduction in assessed valuation sought before the board of county commissioners was obtained under the 1937 law, later declared unconstitutional, and that no effort was made to meet the requirements of the 1916 law.

We are also convinced that where, as in this case, it affirmatively appears that the action of the board was taken upon consideration of one statute, the party seeking to justify the same upon consideration of another statute which made other and additional requirements constituting conditions precedent to relief must show those conditions were met.

In this connection brief allusion to another section of our statute is appropriate. The relator invokes as applicable 12 O. S. 1941, § 299, which reads:

"In pleading a judgment, or other determination of a court or officer of special jurisdiction, it shall be sufficient to state that such judgment or determination was duly given or made; and *the jurisdiction of any such court or of-*

*ficer shall be presumed until the contrary appears."* (Emphasis ours.)

Although the statute in its major aspect relates to method of pleading, the emphasized portion thereof is said by the relator to establish a presumption in lieu of evidence and its allusion to the determination of an "officer of special jurisdiction" is asserted to be sufficiently comprehensive to include a board of special jurisdiction such as the board of county commissioners.

No decision of this court is called to our attention supporting this position. However, it is pointed out that our statute was adopted from Kansas and that the Supreme Court of that state, in Hager v. Wilson, 106 Kan. 127, 186 P. 974, applied the presumption of the statute to a proceeding before the probate judge and in so doing mentioned that its earlier decision in Gehlenberg v. Hartley, 100 Kan. 487, 165 P. 286, was in accord with its decision. Counsel point out that the last mentioned case was a proceeding before the board of county commissioners; however, an examination of the case discloses that it was not based on the statute but was decided without reference thereto. The rule therein announced as expressed in the first paragraph of the syllabus was:

"The general rule that silence of the record of a tribunal of inferior jurisdiction on a jurisdictional point is fatal applies in cases of collateral attack to those jurisdictional facts only which the law directs the tribunal to enter upon its record."

And in the subsequent case, Hager v. Wilson, supra, where the statute was considered and applied to the proceedings of a county judge, it was stated:

"It is contended that this declaration is too board (broad), and should have been confined to the decision of boards of county commissioners in road cases, but no reason is seen why it is not applicable to decisions of officers and inferior tribunals in any case where the statute has not prescribed what jurisdictional facts shall be entered of record, or where all that the statute requires has been preserved in the record. The ruling is supported by Willis v. Sproule, 13 Kan. 257, and the other cases cited in the opinion."

Thus both under the statute and independent thereof the Kansas court considered that the presumption did not dispense with the necessity of those things which were required to be reflected.

The 1916 act, which relator invokes, required that cause for previous nonappearance before the county equalization board be shown by affidavit. The filing of such affidavit would make the cause for nonappearance a matter of record.

In City of Enid v. Champlin Refining Co., supra, we excused the filing of the affidavit, but in Morningside Hospital and Training School for Nurses v. Carmichael, supra, we held in substance that when the showing for nonappearance was not made in the manner required, it must be otherwise reflected by the record of the proceeding before the commissioners. We have thus declared that the statutory requirement contemplates that the record before the county commissioners reflect a showing of good cause for nonappearance before the board of equalization.

Under the holding of the Kansas court the presumption created by statute (sec. 299, supra) in connection with the determination of an official does not constitute a substitute for proof when the matter in issue involves a statutory requirement specifying what the record before the official or board shall show. Thus, the statute invoked is not helpful to relator.

Our view upon the questions above discussed and our conclusion as above stated dispense with the necessity of considering whether the statute of limitations was properly applied by the trial court.

The cause is reversed, with directions to enter judgment for the defendant as to taxes assessed for the year 1932.

CORN, C. J., RILEY, WELCH, and

HURST, JJ., concur. GIBSON, V. C. J., OSBORN, BAYLESS, and ARNOLD, JJ., dissent.

### On Rehearing.

WELCH, J. (concurring in conclusion). I concur generally in the conclusions reached by the majority opinion, but do not approve the manner in which the opinion construes the statute 12 O. S. 1941 § 299. According to my view that statute is applicable here, and it being presented and urged, I think we should so hold.

But if that statute is applicable it seems to me the record shows that plaintiff here voluntarily assumed the burden of proof on the point or proposition of good cause for nonappearance before the equalization board. It is implied by the majority opinion that the record should be construed to show that plaintiff's proof not only failed to sustain the burden, but, on the contrary, definitely established lack of any such good cause in the instant case. In any event, I think we should not hold this statute to be without application to such proceedings.

———

ARNOLD, J. (concurring specially). No one contends in this case, nor is there any holding by this court or any other court, that good cause for not appearing before the board of equalization does not have to be shown before the county commissioners would have the authority to correct erroneous assessments under such a statute as ours. We have consistently held that a showing of good cause for not appearing before the board of equalization is an absolute prerequisite to the exercise of authority granted to correct such assessments.

In this case the affidavit does not show "good cause" as the statute requires, and the record brought here does not absolutely show that good cause was shown before the board made the correction which provoked this controversy, however, the testimony does strongly suggest that such testimony was introduced in support of the affidavit before the order of correction was entered. Upon a similar record and contention, we said in City of Enid v. Champlin Refining Co., 112 Okla. 168, 240 P. 604, that:

" . . . nothing of substance of the claim is required to be stated under oath or otherwise, and the only affidavit required is one showing good cause why the applicant did not attend the meeting of the board of equalization. This not being of the substance or the essence of the claim, we are inclined to the opinion that this provision was inserted for the protection of the board of county commissioners, and was designed to prevent a multiplicity of applications upon unfounded claims, and left it to the discretion of such board whether it would consider a claim or not, where good cause was not shown by affidavit for not having the correction made before the board of equalization, and under a long line of uniform authorities, we hold the filing of the affidavit was directory only and not mandatory."

This ruling has never been overruled by this court and since the date of that opinion the practice has been, in accord with the opinion, as was likely done in this case according to the testimony, to require and make the required showing of good cause. The rule of the Champlin Case should be followed or the case should be overruled. We should not ignore the rule and instead apply the rule announced in the cases relied upon by the majority, whether the rule was announced under facts that did not present issues requiring the announcement of such rule, to wit: Morningside Hospital and Training School for Nurses v. Carmichael, 185 Okla. 48, 89 P. 2d 958, and Tulsa Exchange Co. v. Parkinson, 192 Okla. 311, 136 P. 2nd 694. In those cases the records affirmatively and conclusively showed that "good cause" did not exist. The opinions were not entirely bottomed upon the absence of a showing of good cause in the affidavit. The announcement therein that the record

must affirmatively show good cause for not appearing before the board of equalization was not necessary to a determination of the issue presented. Those opinions correctly hold, in arriving at correct conclusions, that such showing must be made or else the board of county commissioners would be without authority to make a correction of erroneous assessments. Since the records in those cases showed that good cause did not exist, there was no necessity for the announcement of the rule that the record must affirmatively show the existence of good cause.

We distinguished the Champlin Case from the Morningside Hospital Case by pointing to the fact that good cause did exist in the Champlin Case while the record in the Morningside Case showed that good cause did not exist. The rule of the Champlin Case was in no wise criticised but, in effect, approved by us in the Morningside opinion.

The rule of the Champlin Case, supra, makes section 299, 12 O. S. 1941, applicable. It provides:

"In pleading a judgment, or other determination of a court or officer of special jurisdiction, it shall be sufficient to state that such judgment or determination was duly given or made; and the jurisdiction of any such court or officer shall be presumed until the contrary appears."

This statute being applicable, and as long as the Champlin Case stands, there can be no doubt of the intention of the Legislature to require an affirmative showing, by one attacking the jurisdiction of a quasi-judicial administrative board, that jurisdiction to enter its order did not exist. This showing was not made. For the foregoing reasons, and the further reason that the majority opinion is at variance with the common understanding of our rule and great confusion will no doubt result from the rule therein announced, I must dissent on this theory of the case which concedes the correctness of the case of Barry v. Board of Commissioners of Tulsa County, 173 Okla. 645, 49 P. 2d 548, applying and preserving the remedy provided by O.S. 1931 § 12642, which I am convinced is wrong, and it, as well as our other opinions following it, should be overruled.

It cannot be seriously questioned that the assessment and equalization of values of real and personal property for purposes of ad valorem taxation upon a basis of fair distribution of the tax burden is the public policy of the state. It is reflected by constitutional provisions and by statutory enactment. It is unquestionable that mistake and errors will occur in the performance of the ministerial duties involved in such assessments and equalizations. To provide procedure for the correction of such mistakes and errors the Legislature has been recurrently active since statehood. One of these enactments is the one here invoked by the plaintiff, being section 12642, O.S. 1931.

The purpose of all such enactments being to correct inequalities developed in the administration of the assessment and equalization laws they are remedial in their nature and must receive a liberal interpretation not inconsistent with the evident legislative intent. Being remedial as to acts already performed, they are necessarily procedural in character and not substantive.

There is no vested right in any form of procedure. Constitution, art. 5, section 54, only preserves rights which have accrued or proceedings already begun under a repealed statute. The proceedings in the instant case were not begun prior to repeal of section 12642, O.S. 1931. Since there was no vested right in the form of procedure therein prescribed, defendant cannot invoke the protection of the constitutional provision, supra, for a proceeding under the statute commenced since its repeal.

Under the rule ejusdem generis the general words in the first clause of section 12642, "erroneous assessments,

mistakes or errors," must be considered as limited and restricted by the specific words thereafter used in enumerating the instances in which county commissioners may grant relief, to wit: "that any personal or real property has been assessed to any person, firm or corporation not owning or claiming to own the same, or that property exempt from taxation has been assessed." (50 Am. Jur. p. 244, § 249.) In the event erroneous taxes have been paid through mistake of fact, such payment may be refunded. Defendant is not within any of the three classes specifically enumerated, and it is therefore immaterial whether he or his predecessors in interest showed good cause for not appearing before the board of equalization.

Section 12642, O.S. 1931, was enacted at the special session of the Legislature in 1916. At its regular session in 1915 the same Legislature had provided by chapter 107, S.L. 1915, for the correction and adjustment of all other forms of errors in assessments and levies by apperance before the board of equalization and appeals therefrom to the district court, and had declared this to be the sole remedy for erroneous assessment and equalization. (O.S. 1931 §§ 12659 to 12665, inc.)

Section 12642 was intended to apply and leave effective operation only as to current assessments and tax rolls because it provides that applications thereunder must be made "before the taxes have been paid," and by law the taxes were required to be paid on or before the 1st day of May each year. (O.S. 1931 § 12740.)

No substantial rights vested under section 12642 and the remedy provided thereby did not exist at the time this proceeding was begun because of the repeal of the act. Barry v. Board of Commissioners of Tulsa County, supra, holding contrary, should be overruled.

I, therefore, concur in the result.

OSBORN, J., concurs in the views herein expressed.