SHIRES et ux. v. REYNOLDS et ux.

No. 33746.    Nov. 21, 1950.

*224 P. 2d 580.*

T. Austin Gavin, of Tulsa, for plaintiffs in error.

C. R. Thurlwell, of Tulsa, for defendants in error.

ARNOLD, V.C.J. In substance, the facts to be considered in this case are these: on April 8, 1946, W. L. Reynolds and Fern Reynolds, husband and wife, sold and conveyed to Oren T. Shires and Laura M. Shires, husband and wife, by general warranty deed certain premises in the city of Tulsa described as lot 2 in block 2, University Park Addition as shown on the recorded plat thereof; in November, 1946, Shires and wife sold this property to C. T. Cox (it is not clear from the record whether Cox bought all of lot 2 or only the east half thereof); Cox sought to obtain a loan on the property but was advised by the loan company that the ad valorem taxes for the years 1930, 1931 and 1932 had not been paid and that these delinquent taxes would have to be discharged before a loan would be made on the property; Shires went to the office of Reynolds and told him of this development and demanded that he clear the records as to these taxes under the covenant of warranty contained in his deed; Reynolds said he would take the matter up with the people in Texas from whom he bought the property but nothing ever resulted from such a contact and Reynolds finally refused to take any action or make any payment; on January 30, 1947, C. T. Cox wrote a letter to the county treasurer advising that it was his desire to clear the title to the east half of lot 2 in block 2, University Park Addition, and enclosed his check for $228.80 which he advised the treasurer was the amount due under certificate No. 12456 and requested that the treasurer make his records show these taxes paid in full; the check was cashed and receipt issued for the taxes and penalty; the funds to cover the amount of this check were furnished to Cox by Shires for the reason that the deed from Reynolds and wife to Shires and wife was not then of record and the title to the property stood at that time in the name of C. T. Cox; under the record, assertions and admissions of the parties it appears that a certificate of error had issued in 1937 either reducing the taxes originally levied because determined by the board of county commissioners to be excessive because the valuation of the property was too high or for the full amount of the taxes levied.

On December 12, 1947, the case was tried to the court without a jury and at the conclusion thereof the court rendered judgment in favor of defendants. After unsuccessful motion for new trial plaintiffs have appealed assigning numerous specifications of error but in their brief the single proposition relied upon for reversal reads:

"A certificate of error having been issued some time in the year 1937 adjusting ad valorem taxes for the years 1930, 1931, 1932, the property conveyed by general warranty deed from defendants to plaintiffs was not ' . . . unincumbered of and from all . . . taxes . . .' and as a consequence the defendants breached the warranty contained in said deed and are liable for the difference between the taxes which they paid under said certificate and the amount of taxes actually due for the years in question."

The 1937 Act, art. 14 of chap. 66, S.L. 1936-1937, was declared unconstitutional. Ivester v. State ex rel. Gillum, 183 Okla. 519, 83 P. 2d 193. The certificate in question could not have been issued under that Act. But if its issuance was authorized under any act of the Legislature in force and effect at the time of its issuance it would be valid. So we come to the specific contention made by the defendant that the certificate was validly issued under the authority of the 1916 Act (O.S. 1931, section 12642) which provides:

"The board of county commissioners of each county is hereby authorized to hear and determine allegations of erroneous assessments, mistakes or errors made in assessing or preparing tax rolls or in the description of land or other property, before the taxes have been paid, on application of any person or persons who shall show by affidavit good cause for not having attended the meeting of the county board of equalization for the purpose of correcting such error, mistake or difference, and if upon such hearing it appears that any personal or real property has been assessed to any person, firm or corporation not owning or claiming to own the same, or that property exempt from taxation has been assessed, it shall be the duty of the board of county commissioners to correct such error, and the county clerk, upon the order of said board, shall issue a certificate of error to the county treasurer, stating the amount of such correction, which amount the treasurer shall deduct from the original assessment or assessed amount; . . ."

Though this Act was repealed in 1933 the rights accruing thereunder became fixed prior to its repeal and the right to pursue the remedy afforded thereby, to wit: the right to a certificate of error for the purposes provided was preserved. Barry v. Board of County Commissioners of Tulsa County, 173 Okla. 645, 49 P. 2d 548.

The property involved in this appeal was subject to taxation and was taxed in the name of its owner. No one contends otherwise. The taxes levied could not be reduced by the board of county commissioners under a claim of excessiveness because the jurisdiction of the board so to act does not affirmatively appear in this record. Special Indemnity Fund of State of Oklahoma v. Hunt et al., 200 Okla. 1, 190 P. 2d 795; Salaney v. Ferris, District Judge, et al., 201 Okla. 236, 204 P. 2d 270. No affidavit showing good cause for not appearing before the board of equalization is shown in the record. John H. Miller, a member of the board of county commissioners of Tulsa county from 1933 to 1939, testified in reference to the proceedings of the board during the period in issuing certificates of error, but he had no independent recollection of any particular case. According to his testimony the general practice of the board was to hear statements from owners of the property or their attorneys and to act on such statements. He testified:

"Q. Mr. Miller, as a matter of fact, in the handling of all of these cases, were they not by and large handled informally? A. Yes, some time a lawyer would bring them in and some times an individual would come in. Q. As a matter of fact, by and large were they not handled informally, and discussed without any formal hearings? A. No, no formal hearings. Matters would come in, some times the parties would come in and some times the attorney would come in and discuss the case. Q. And they would make statements which you considered satisfactory and then you would issue a certificate of error? A. Yes, sir."

This is all the testimony on the point and it is insufficient to show authority of the board to make the reduction. The order of correction was issued without authority and is invalid. Morningside Hospital & Training School for Nurses v. Carmichael, County Treasurer, 185 Okla. 48, 89 P. 2d 958; Tulsa Exchange Co. et al. v. Parkinson, County Treasurer, 192 Okla. 311, 136 P. 2d 694; Parkinson, County Treasurer, v. State ex rel. Thieman, 196 Okla. 80, 162 P. 2d 551.

The taxes paid by Cox therefore constitute a lien on the property. It was an incumbrance running with the land and its discharge was a legal duty of plaintiffs by the terms of their conveyance to Shires whereby they warranted the premises " . . . unincumbered of and from all . . . taxes . . ." Cox had no other way of discharging the incumbrance and his payment of the taxes was not voluntary.

Defendants further contend that plaintiffs cannot maintain this action for the reason that they have not been

evicted from the property and therefore have suffered no injury from the breach of defendants' warranty against incumbrances contained in the deed. Such is not the rule in this jurisdiction. Under the express language of 23 O. S. 1941 §26, damages for breach of covenant against incumbrances may be recovered to the extent of the amount actually expended in removing the incumbrances. The material language of the section is:

"The detriment caused by the breach of a covenant against incumbrances in a grant of an estate in real property, is deemed to be the amount which has been actually expended by the covenantee in extinguishment of either the principal or interest thereof; . . ."

In the case of Perkins v. Good, 179 Okla. 405, 65 P. 2d 1218, in the body of the opinion, after quoting the above section, this court said:

"It will be observed that the provisions of the above section are effective only when the covenantee has actually expended money in the extinguishment of the incumbrance for whose breach damage is sought. The statutory rule is in accord with the overwhelming weight of authority."

It is suggested by defendants that plaintiffs accepted the deed together with an abstract of title which plaintiffs had examined and that plaintiffs are bound by their acceptance of the title in the condition shown by the abstract. Nothing appears in this record as to what the abstract showed with reference to these taxes. It merely shows that the attorney who examined the abstract for the plaintiffs approved the title. The same abstract when examined by the loan company at the request of Mr. Cox with a view to making a loan on the property found these taxes unpaid and outstanding. We think defendants' breach of their covenant of warranty against incumbrances, including a special mention of taxes, cannot be excused by reason of plaintiffs' reliance on an erroneous opinion of a title examiner when they accepted the title warranted by defendants to be free and clear of incumbrances, including taxes. Judgment reversed.

WELCH, GIBSON, LUTTRELL, HALLEY, JOHNSON, and O'NEAL, JJ., concur. CORN, J., concurs in conclusion.