**IVESTER, Intervener, v. STATE ex rel. GILLUM, Co. Atty., et al.**

No. 28350. July 26, 1938.

Rehearing Denied Sept. 27, 1938.

Application for Leave to File Second Petition for Rehearing Denied Oct. 18, 1938.

H. C. Ivester, N. E. McNeill, and R. D. Hudson, for plaintiff in error.

Neville Gillum, Donald T. Royce, Mac Q. Williamson, and Fred Hansen, for defendants in error.

Fred A. Speakman, Streeter Speakman, Grace Arnold, and Glenn O. Young, amici curiae.

HURST, J. This action involves the constitutionality of Senate Bill 285 of the Sixteenth Legislature (ch. 66, art. 14, S. L. 1937; Okla. St. Ann. sec. 184 a, b, and c), which authorizes the board of county commissioners of each county "to hear and determine allegations of excessive assessments, mistakes or differences in the description of or value of lands or other property for the year 1936 and prior years, provided, the taxes have not been paid, upon the application of any taxpayer filed with the county clerk of said county on or before November 1, 1938." The act provides for a hearing upon the application of the taxpayer and authorizes the board of county commissioners to reassess such property at its fair cash value, if it finds the property to be assessed at more than it would bring at a fair voluntary sale. The other provisions of the act establishing the mechanics for the exercise of this power are not now material.

The act was assailed as unconstitutional in violation of section 15, art. 2; secs. 52, 53, and 57 of art. 5; and section 5, art. 10, of the State Constitution, and sec. 10, art. 1, of the 14th Amendment of the federal Constitution, in an action to enjoin the county treasurer of Beckham county from proceeding under the act. The trial court granted the injunction, holding that the act violates section 52, art. 5, of the State Constitution, which provides that "the Legislature shall have no power to revive any right or remedy which may have been barred by lapse of time or by any statute of this state." An intervener, whom we shall refer to as defendant, brings this appeal.

Defendant's main contention is that the act does not violate section 52, as held by the trial court, and takes the position that our consideration must be limited to the application of that section in the absence of a cross-appeal by plaintiff. But we do not agree that our consideration must be so limited. If the decision of the trial court was correct on any ground, the reason given by the trial court is not controlling, and the judgment must be affirmed. Douglas v. Douglas (1936) 176 Okla. 378, 56 P.2d 362; Ringer v. Byrne (1938) 183 Okla. 46, 80 P.2d 212.

To decide whether Senate Bill 285 violates section 52, art. 5, supra, would necessitate a determination of the applicability of said section to counties and other municipal subdivisions of the state. We held that it does so apply in Union School District v. Foster Lbr. Co. (1930) 142 Okla. 260, 286 P. 774, and Meriwether v. Board (1931) 150 Okla. 223, 1 P.2d 390, but held that said section does not apply to the state in Fletcher v. State (1934) 168 Okla. 538, 34 P.2d 595. It is unnecessary to attempt to reconcile these decisions, for we think it clear that the act does violate section 53, art. 5, of the State Constitution, which provides that "the Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liabilities or obligations of any corporation or individual, to this state, or any county or other municipal corporation thereof."

Under the state of the law existing at the time of the passage of the act in question, the assessments for 1936 and prior years had become final and conclusive as to part of the persons affected by the act, and the tax based thereon was a delinquent tax or fixed liability. The remedy provided by the act, by its terms, is available to all persons who have not paid the taxes levied against their property for 1936 and prior years. We may logically classify all the persons affected by the act into three groups: (a) Those who appeared before the county board of equalization and asked that the assessed valuation of their property be reduced: (b) those who failed to appear before the county board of equalization, and can show no good cause for failing to do so; and (c) those who could appear before the board of county commissioners by showing good cause for not having appeared before the county board of equalization, as authorized by section 12642, O. S. 1931. We will consider each of these classes separately.

(a) As to that class of taxpayers who did appear before the county board of equalization, the decision of that board, if unappealed from, became final (State v. Stockholders of Commercial Nat. Bk. of Muskogee [1927] 125 Okla. 257, 257 P. 380), and constituted a final adjudication of the question of the fair cash value of the property (Huckins Hotel Co. v. Board of Comm'rs [1916] 64 Okla. 235, 166 P. 1043), and fixed the liability for taxes. The same result follows where an appeal was taken and the question adjudicated in the appellate courts.

(b) As to that class of taxpayers who failed to appear before the county board of equalization, and can show no good cause for failing to do so, the same result must follow. This conclusion calls for a consideration of the state of the law existing at the time of the passage of the act in question in regard to the finality of the assessments against the property of this class for 1936 and prior years. It is not denied that, prior to the passage of chapter 115, S. L. 1933, the jurisdiction of the county board of equalization was limited to a review of the assessment for the current year. Blake v. Young (1927) 128 Okla. 153, 261 P. 923; sections 12653 and 12663, O. S. 1931. Therefore, after the adjournment of the board each year, or as the statute (sec. 12660, O. S. 1931) provides, "within ten days after the first Monday in June," the assessment as made became final and taxes based thereon constituted liabilities. At the conclusion of the labors of the county board of equalization, the presumption obtains that every taxpayer owning property in the county and who did not appear to object to his assessment was satisfied with the value placed on his property and in contemplation of law he was before the board and acquiesced in the assessment. This presumption is conclusive as to all taxpayers of this class. Carrico v. Crocker (1913) 38 Okla. 440, 133 P. 181; Huckins Hotel Co. v. Board of

Comm'rs, supra. Defendant, however, in his argument that the act does not violate section 52, art. 5, places an interpretation upon the 1933 law which if adopted here would lead to a contrary conclusion as to assessments for the years subsequent to that time. He contends that by the 1933 law the county board of equalization was given jurisdiction to review assessments for prior years and it would therefore follow that the assessment would not become final at the adjournment of the board each year as to the class now under consideration. Under such view of the 1933 law, the taxes for the years subsequent to that time, to and including 1936, would not constitute fixed liabilities and section 53 would probably not be applicable to the legislation now being attacked. But we cannot agree with the construction which the defendant seeks to place upon the 1933 law. Section 7, ch. 115, S. L. 1933, which amends section 12660, O. S. 1931, provides:

"In any case where the county assessor or the county board of equalization shall increase the valuation of any property above the value returned by the taxpayer, the secretary of the county board of equalization shall notify, by mail, the person in whose name any such property is listed, giving the amount of such valuation as increased; and such person shall have five days from receipt of such notice in which to file, with the said secretary of said board, a written complaint, specifying his grievances, and the pertinent facts in relation thereto, in ordinary and concise language and without repetition, and in such manner as to enable a person of common understanding to know what is intended; and said board shall be authorized and empowered to take evidence pertinent to said complaint; and for that purpose, is authorized to compel the attendance of witnesses and the production of books, records and papers, by subpoena, and to correct or adjust the same as may seem just. The taxpayer shall have the right to appeal from the finding of the board, and the stenographer of the county court is directed, at the request of the board or taxpayer, to take shorthand notes of such testimony and to transcribe such complaint and evidence, and a full transcript of the orders of the board thereon; to file the same, with his certificate as to its accuracy, in the district court, the filing of which transcript shall complete said appeal, which shall, in due course, be examined and reviewed by said court, and affirmed, modified, or annulled, as justice shall demand. Provided, that, in order to perfect his appeal, the party appealing shall file notice thereof with the secretary of the county board of equalization of the county wherein the assessment was made, within ten days after the adjournment of the said board; and provided, further, that where any taxpayer fails or neglects to file a written complaint, as provided herein, he shall be estopped from contesting or appealing the assessment as made by the county assessor, or equalized by the county board of equalization, unless the county board of equalization, for good cause shown, shall accept such complaint, if filed any time while the said board is in session, and shall hold a hearing thereon. The appeal herein provided is defined to be an administrative rather than a judicial appeal, and the court, in hearing and determining the issue, shall sit in the same capacity as if it were a reviewing board of equalization."

Defendant relies on that part of the second proviso of said section which reads that "unless the county board of equalization for good cause shown shall accept such complaint if filed any time while said board is in session, and shall hold a hearing thereon," as authorizing the board to grant relief against alleged excessive assessments for any prior years. But the proviso relied on by defendant, when construed with section 7 in its entirety, simply means that if the taxpayer fails to file his complaint within five days after the receipt of notice from the secretary of the board, of the increase in his valuation, the board may, for good cause shown, accept and act upon such complaint after that time, while it is still in session. The entire purport of the act is to limit consideration of overassessments to those for each year, as had been done prior to 1933, to the end that there may be finality, which is necessary to an orderly operation of the tax system.

Moreover, this construction was assumed in the case of Barry v. Board of County Com'rs of Tulsa County (1935) 173 Okla. 645, 49 P.2d 549. It was there held, in a proceeding before the board of county commissioners after the repeal of section 12642, O. S. 1931, that the right to relief from overassessment for the years 1931 and 1932 was an accrued right, and that since the 1933 act provided no new remedy to obtain such relief for prior years, the taxpayer could still proceed under the repealed section. The court, therefore, in effect held that the 1933 law created no remedy to proceed before the county board of equalization for the adjustment of assessments for prior years.

It follows that the assessments for 1936 and prior years as to this class of taxpayers became final upon the adjournment of the board during each of said years, there being no other forum before which

the taxpayer could appear to contest the assessment, and the taxes based thereon constitute fixed liabilities. (Sections 12653 and 12663, O. S. 1931.)

The fixed liabilities for taxes based upon the assessments which became final as to the taxpayers of the two classes above referred to are "liabilities" within the meaning of section 53, art. 5, of the State Constitution. Nelson v. Pitts (1926) 126 Okla. 191, 259 P. 533. Although it has been said in City of Sapulpa v. Land (1924) 101 Okla. 22, 223 P. 640, that "taxes are not debts," yet we do not think it necessary to stop to consider whether delinquent taxes are "debts" or "obligations," since they are clearly "liabilities." As stated in State v. Pioneer Oil & Refining Co. (1927, Tex. Com. App.) 292 S. W. 869, wherein the court was construing a constitutional provision substantially identical with section 53, "We do not stop to consider whether a delinquent tax is an 'indebtedness' or 'obligation' within the meaning of the language quoted, for that it is a 'liability' cannot be doubted." In Kentucky, where a similar provision prevails, it was claimed that laws releasing or compromising tax claims were valid because such a law is, after all, "but a law fixing the limitation of actions." But the court, in City of Louisville v. Louisville Ry. Co. (1901, Ky.) 63 S. W. 14, refuted this plea by quoting from the Texas case of Ollivier v. City of Houston (1899, Tex. Civ. App.) 54 S. W. 940, wherein it was said that "a power cannot be exercised incidentally or by indirection which could not be directly exercised is elementary. The effect of the act is to relinquish liability. The purpose to accomplish that end is manifest." See, also, 61 C. J. 973, and note 61; Sanderson v. Bateman (1927, Mont.) 253 P. 1100; Yellowstone Packing & Provision Co. v. Hays (1928, Mont.) 268 P. 555; and Graham Paper Co. v. Gehner (1933, Mo.) 59 S. W.2d 49, which construed constitutional provisions similar to section 53 and denied the right of the Legislature to relinquish, in whole or in part, the liability arising from taxes.

The 1937 statute, now under attack, recognizes that the total tax (including that which may be alleged to be based on excessive valuation) is a liability. The statute does not allow the abatement permanently of the alleged excess, for it is provided that the total tax and assessment shall stand in full force until the adjusted tax is paid; and, if not paid within 60 days after the order of the board of county com-

missioners is made, the original assessment is to continue in full force, and the order of the board of county commissioners reducing the assessed valuation is inoperative.

The effect of the 1937 act is to indirectly authorize the releasing or extinguishing, in part, of liabilities due the county and the other municipal subdivisions of the state, by authorizing the reduction of the assessed valuations which have become final. Such a result could not have been directly accomplished, by reason of section 53; neither can it be done indirectly, as is attempted in this act.

(c) As to that class of taxpayers who could appear before the board of county commissioners by being able to show good cause for not having appeared before the county board of equalization, as authorized by section 12642, O. S. 1931, we have this situation: By virtue of the decision in the Barry Case they possess an accrued right to proceed thereunder even after the repeal of said section on April 10, 1933, to obtain corrections in assessments for 1933 and prior years, although how long said right exists or whether same had expired prior to the enactment of the 1937 law now under attack has not been adjudicated. It is plain, however, that the right to proceed under section 12642 does not obtain as to assessments made for the years 1934, 1935, and 1936 (after the repeal of section 12642), the sole remedy existing for those years to obtain redress from overassessment being before the county board of equalization. The only class of taxpayers, therefore, whose assessments may be held not to be "liabilities" within the meaning of section 53, art. 5, are those who could invoke the rule of the Barry Case as to assessments prior to 1934. We may assume, without deciding, that the tax based upon the assessments of this class does not constitute a "liability" within the meaning of section 53. Yet it is settled that if the constitutional and unconstitutional parts of a statute are so dependent as to warrant the belief that they were intended to take effect in their entirety, the whole statute must fall. Atchison, T. & S. F. Ry. Co. v. Long (1926) 122 Okla. 86, 251 P. 486. This rule is applicable here. Since the Legislature intended Senate Bill 285 to apply to all classes of taxpayers, we have set out hereinbefore, and not to the one limited group which might be able to take advantage of the act by virtue of the decision in the Barry Case, the act must be held unconstitutional and void as regards all the classes

of taxpayers encompassed thereby. Williams v. State of N. H. (N. H.) 125 Atl. 661.

In reaching the conclusion that the act must fall, we have given due consideration to the argument of the defendant that the act in question simply safeguards to the taxpayers the rights guaranteed to them by section 8, art. 10, of the State Constitution, which requires that "all property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale." But it must be borne in mind that the statutes, above referred to, which gave the taxpayers a right to appear before the board of equalization each year, and the statute (sec. 12642, O. S. 1931) authorizing the county commissioners to adjust assessments when the taxpayer could show good cause for not having appeared before the board of equalization, were enacted for the very purpose of vitalizing section 8 to the end that all property should be assessed at its fair cash value. The act in question attempts to give him the right to have his assessments reduced a second time, after such right has been lost, either by failure to appear before the board of equalization, or after he has so appeared and his application for reduction has been finally adjudicated, and after his delinquent taxes have become a fixed liability. This cannot be done without doing violence to section 53.

It is unnecessary to consider the other constitutional provisions referred to by defendant.

Affirmed.

RILEY, PHELPS, CORN, and GIBSON, JJ., concur. OSBORN, C. J., and WELCH, J., dissent. BAYLESS, V. C. J., not participating DAVISON, J., absent.