**NATIONAL LIFE & ACCIDENT INS. CO.
v. PARKINSON, County Treasurer of
Tulsa County, Okl., et al.**

No. 2657.

Circuit Court of Appeals, Tenth Circuit.

May 27, 1943.

Rehearing Denied July 26, 1943.

Solon W. Smith, of Oklahoma City, Okl. (James S. Twyford and William J. Crowe, both of Oklahoma City, Okl., on the brief), for appellant.

William M. Taylor and G. Ellis Gable, both of Tulsa, Okl. (Dixie Gilmer, Co. Atty., and Charles A. Coakley, both of Tulsa, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The National Life Insurance Company appeals from an adverse judgment in a declaratory action brought by it against the County Treasurer of Tulsa County, Oklahoma, to adjudge the ad valorem taxes on certain property located in the City of Tulsa fully paid and discharged, for the taxable years 1931, 1932, and 1935. In the alternative, it sought a judgment against the Guaranty Abstract Company and its statutory surety, the National Surety Corporation, for the amount of taxes found to be due and payable on the property for the years in question. The latter cause of action is based upon alleged omissions and imperfections in an abstract of title furnished by the abstracter to the Insurance Company, upon which it relied in making a loan upon the property involved. Jurisdiction is based upon diversity of citizenship and requisite amount in controversy.

Ad valorem taxes for the years 1931, 1932, and 1935 were levied against Lot 7, Block 117, in the original Town, now City, of Tulsa, Oklahoma, and were unpaid on July 6, 1937. On that date, J. P. Norton, as court receiver for the above described real estate, made application to the Board of County Commissioners of Tulsa County to correct the assessments on the real estate for the years 1931, 1932, and 1935 by reducing the valuations and assessments, on the grounds that the assessments for these years were excessive and disproportionately high. The application was filed with the County Clerk and prosecuted under the provisions of Sections 1-3, Art. 14, c. 66, Sess. Laws of 1937[1], repealed by Sess.Laws of 1939, p. 527, § 1, see 68 O.S.A. § 184d. Upon a hearing before the Board, conducted on July 14, 1937, the assessments for the years in question were revised and reduced, but Norton was dissatisfied with the reduction and perfected an appeal as authorized by Section 3 of the Act,[2] supra, to the District Court of Tulsa County. Statutory

---

[1] "Section 1. The Board of County Commissioners of each county is hereby authorized subject to the provisions of this Act, to hear and determine allegations of excessive assessments, mistakes or differences in the description of or value of lands or other property for the year of 1936, and prior years, provided, the taxes have not been paid, upon the application of any taxpayer filed with the County Clerk of said county on or before November 1, 1938. * * *"

[2] "Section 3. Appeal may be taken from the action of the Board of County Commissioners in any case set out in Sections 1 and 2 by the County Attorney, without bond, or by party making application, or any taxpayer of said county feeling aggrieved by the order of said Board. * * * Said appeal shall be heard by the District Court de novo, and an appeal may be had to the Supreme Court from the District Court, as in all other matters. * * *"

cost bond was deposited with the County Clerk, and the appeal was filed and docketed in the District Court on August 20, 1937. On the 8th day of September 1937, and while the appeal to the District Court was pending, Norton filed another application with the Board of County Commissioners to correct the assessments, by further reducing the assessed value of the property for the same years. On a hearing before the Board, apparently conducted on the same day, to wit September 8, 1937, the Board further reduced the assessments against the real estate. The reduction however was conditioned upon the dismissal of the appeal then pending in the District Court, and on the following day Norton dismissed the appeal. The order of dismissal provided in part as follows: "Now on this 9th day of September, 1937, it appearing to the court that the Board of County Commissioners of Tulsa County, Oklahoma, have on September 8, 1937, made a further re-assessment of unpaid ad valorem tax upon Lot Seven, Block One Hundred Seventeen, in the original town of Tulsa, Oklahoma, and which re-assessment was conditioned upon the withdrawal of this appeal; and it being the desire of appellant to withdraw the appeal for said purpose. * * * It is ordered that this appeal be withdrawn at costs of appellant."

On September 21, 1937, the taxes as adjusted by the last order of the Board of County Commissioners were paid by Norton as receiver for the said property, out of receivership funds, pursuant to an order of the court under which Norton was acting as receiver. Thereupon the County Treasurer issued to Norton proper receipts evidencing the payment of the taxes in full for the years involved, and at or about the same time changed his tax rolls for these years to reflect the action of the Board by drawing a line through the original assessments and corresponding taxes, and by inserting the adjusted assessments and corresponding taxes immediately above, with the notation, "Adj. C. of C. No. 825, 9/8/37" (Adjusted Certificate of Correction).

Thereafter, and on or about October 22, 1939, the appellant loaned the owners of the property $85,000.00, taking a note and mortgage on the real estate to secure the loan. Before consummating the loan, an abstract of title was furnished to the Appellant by defendant Abstract Company, upon which Appellant relied in making the loan. The abstract of title, and particularly the entry relating to taxes, was in conventional form. It recited in substance that according to the tax records in the office of the County Treasurer, the said real estate had been assessed for each year, and that there were no taxes assessed against the said real estate, either general or special, due and unpaid for the years 1908 to 1938. The abstract did not literally or pictorially reflect the changes made by the County Treasurer on his tax rolls pertaining to the property for the taxable years 1931, 1932 and 1935; neither did it reflect any of the proceedings before the Board of County Commissioners relating to the tax assessments, a record of which was in the County Clerk's office, but not in that department referred to as the registrar of deeds where transactions involving real property are usually recorded. The abstract did not reflect or recite the docketing of the appeal to the District Court by Norton, or the order of the court permitting Norton to withdraw the appeal.

On October 18, 1938, the Supreme Court of Oklahoma declared the 1937 Act, supra, unconstitutional as violative of Section 53, Art. 5 of the Oklahoma Constitution, which provides, "The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liabilities, or obligations of any corporation, or individual, to this State, or any county or other municipal corporation thereof". See Ivester v. State, 183 Okl. 519, 83 P.2d 193. On November 19, 1940, the Supreme Court of Oklahoma reaffirmed the unconstitutionality of the same Act and further held any act or order of the Board of County Commissioners made in pursuance or under the authority of this Act void and ineffectual to vest any rights in any persons claiming by or under authority conferred upon the Board by the said Act. See State v. Board of County Commissioners of Creek County, 188 Okl. 184, 107 P.2d 542, 550. Thereafter and on or about the 1st of January, 1941, the County Treasurer, acting without court order, but under the law as announced in the decision of the Supreme Court voiding the orders of the Board, drew a line through the notation, "Adj. C. of C. No. 825, 9/8/37" and placed alongside thereof the notation, "Cert. No. 825 voided", and for each of the years in question the Treasurer in effect restored the original tax valuation and corresponding assessments. Consequently the records of the County Treasurer

now show unpaid taxes for each of the years, representing the difference between the amounts paid under the void order of the Board, and the amounts originally due based upon the original valuations and assessments, and these taxes, if valid now constitute a lien prior and superior to the mortgage of the appellant.

The appellant apparently concedes, as it must under the decisions of the Supreme Court of Oklahoma, supra, that the proceedings before the Board in pursuance of the void Act of 1937, supra, were a nullity, and conferred no vested right in the property owner or the mortgagee. But it is contended in effect that when the appeal was perfected by Norton to the District Court as provided by Section 3 of the Act, and the case was docketed there, the District Court of Tulsa County acquired jurisdiction of the subject matter and of the parties, including the taxpayer, the State, and its political subdivisions; hence when, upon application, the District Court by its judicial order authorized the receiver to withdraw his appeal and submit to the order of the Board, and further authorized the payment of the taxes as adjusted out of receivership funds, its orders constituted judicial acts in the nature of or closely akin to a retraxit, a judgment of dismissal, or judgment by consent, tantamount to a judgment on the merits by a court having jurisdiction of the subject matter and of the parties, and jurisdiction to adjudge the validity of the Act. On this theory, it is argued that the tax liability was determined and discharged by a valid judgment of a court of competent jurisdiction, and not by an unconstitutional order of the Board of County Commissioners; that the judgment of the District Court consenting to the withdrawal of the appeal became final and unappealable before the statute under which the court proceeded was declared unconstitutional, therefore its judgment is res judicata of every issue adjudicated or which could have been adjudicated under the issues.

■■■ It is the rule in Oklahoma that "Where a judgment is rendered under an unconstitutional statute, by a court having jurisdiction to determine the validity or invalidity thereof, and the question is not raised, or the invalidity of the law asserted, a party to the action is precluded, under the rule of res judicata, from thereafter asserting the invalidity of the law to avoid such judgment, even though it has been subsequently declared unconstitutional. In such a case the rights are acquired under a valid judgment, not under the unconstitutional statute." State v. Board of County Commissioners of Creek County, supra; see also Casner v. Meriwether, 152 Okl. 246, 4 P.2d 19, 28; Jones v. McGrath, 160 Okl. 211, 16 P.2d 853; Walker v. Stubblefield, 167 Okl. 50, 27 P.2d 1043; Hanchett Bond Company v. Morris, 143 Okl. 110, 287 P. 1025; 16 C.J.S. Constitutional Law, § 101c. It is also the law in Oklahoma that a "dismissal of a suit made after and based upon, an agreement between the parties by which a compromise settlement and adjustment of the subject-matter in dispute is made, is a dismissal on the merits, and is equivalent to a judgment of retraxit at common law; and as such would be a bar to further litigation on the same subject between the parties." Turner v. Fleming, 37 Okl. 75, 130 P. 551, 45 L.R.A.,N.S., 265, Ann.Cas. 1918B, 831; Amos v. Johnston, 162 Okl. 115, 19 P.2d 344; Empire Oil & Refining Company v. Chapman, 182 Okl. 639, 79 P.2d 608, 609; Eberle v. Sinclair Prairie Oil Company, 10 Cir., 120 F.2d 746, 135 A.L.R. 1494; United States v. Parker, 120 U.S. 89, 7 S.Ct. 454, 30 L.Ed. 601; see also Freeman on Judgments, Vol. 3, § 1350.

■■■ Undoubtedly, the doctrine of res judicata has application to a consent judgment or a final judgment of dismissal, but we do not think that the order of the District Court merely consenting to the withdrawal of the appeal, to permit the second order of the Board (September 8, 1937) to become final and effective, rises to the dignity of a consent judgment or dismissal on the merits. The jurisdiction of the District Court of Tulsa County was invoked under the provisions of the void statute, which empowered the court to hear and determine the issues de novo from the Board, but jurisdiction was not exercised on any question relating to the merits, and the order does not operate to adjudicate any issues raised by the appeal. Courts do not validate that which is invalid by merely consenting to a dismissal of the controversy over which its jurisdiction has been invoked. It follows that tax liability on the property involved was determined by the Board, not by the District Court, and the rights of the Appellant must stand or fall upon the validity of the order of the Board pursuant to which the taxes were adjusted and paid. In these circumstances, we do not think the

doctrine of res judicata as sometimes applied to consent judgments or dismissals has any application to the question before us. Furthermore, no estoppel can be created by the acts of county officers in excess of their statutory or constitutional powers. Airy v. Thompson, 154 Okl. 1, 6 P.2d 445; see also State v. Board of County Commissioners of Creek County, supra, page 551 of 107 P.2d.

■ We hold that the order of the Board, was void, and no rights were acquired by the appellant thereunder, and no validity was imparted to it by the order of the District Court permitting the withdrawal of the appeal, or by the order of the District Court authorizing the receiver to pay the taxes in accordance with the order of the Board.

The appellant seeks also to sustain the validity of the Board's orders for the taxable years 1931 and 1932 by invoking the provisions of Section 9674, O.S. 1921, Section 12642, O.S.1931 (Sess.Laws of 1916, chap. 19, § 1, approved February 26, 1916), on the theory that although the parties proceeded, and the Board acted, under the provisions of the 1937 Act, and not the 1916 Act, yet if the steps taken under the provisions of the 1937 Act also constituted a substantial compliance with the requirements of the 1916 Act, the appellant may rely thereon to impart validity to the orders of the Board for the years during which it is applicable. The Act was repealed in 1933 (Chap. 115, § 14, Sess.Laws of 1933) but the repeal of the Act does not affect rights which accrued prior thereto, although asserted afterwards. Barry v. Board of County Commissioners, 173 Okl. 645, 49 P.2d 548.

The 1916 Act, supra, provided in part, "The board of county commissioners of each county is hereby authorized to hear and determine allegations of erroneous assessments, mistakes or errors made in assessing or preparing the tax rolls or in the description of land or other property, before the taxes have been paid, on application of any person or persons who shall show by affidavit good cause for not having attended the meeting of the county board of equalization for the purpose of correcting such error, mistake or difference, and if upon such hearing it appears that any personal or real property has been assessed to any person, firm or corporation not owning or claiming to own the same, or that property exempt from taxation has been assessed, it shall be the duty of the board of county commissioners to correct such error, and the county clerk, upon the order of said board, shall issue a certificate of error to the county treasurer, stating the amount of such correction, which amount the treasurer shall deduct from the original assessment or assessed amount * * *". This particular statute has been construed by the Oklahoma courts to authorize the Board of County Commissioners to correct the assessments on the tax rolls by reducing the assessed value of property after the Board of Equalization had equalized the assessments pursuant to statutory authority granted by Section 12645 et seq. O.S.1931, 68 O.S.A. § 254 et seq. State v. State ex rel. Shull, 142 Okl. 293, 286 P. 891; City of Enid v. Champlin Refining Company, 112 Okl. 168, 240 P. 604; but see Hays v. Bonaparte, 129 Okl. 258, 264 P. 605. See also Bostick v. Board of Commissioners, 18 Okl. 92, 91 P. 1125; Milam v. Smith-Mauer Bros., 38 Okl. 328, 133 P. 33, which placed a different construction on a similar statute.[3]

As thus construed, its constitutionality is challenged on the same grounds and for the same reasons asserted in Ivester v. State,

---

[3] § 7601, 7602, Comp.Laws of 1909, approved March 10, 1909 (§§ 7353, 7354, O.S. 10; 9647, 9648, O.S. 21; 12638, 12639, O.S. 31) reinacted Laws of 1941, p. 330, § 56, 68 O.S.A. § 15.56, authorized the Board of County Commissioners of each county to correct assessments upon the assessment rolls or tax rolls of the county, any double or erroneous assessment of property, or any property assessed in the county for taxes of a year to which the same was not subject, upon conditions and in the manner provided therein. But the authority of the Board to correct the errors was strictly construed, and as construed, was held not to authorize the Board to correct an assessment upon the grounds that it was excessive. See Bostick v. Board of Commissioners, 19 Okl. 92, 91 P. 1125; Milam v. Smith-Mauer Bros., 38 Okl. 328, 133 P. 33. A similar statute approved March 25, 1911, Laws of 1910-11, chap. 152, § 14; § 9673, O.S.1921; § 12641, O.S.1931) was nullified for constitutional defects in the title of the Act. Johnson v. Grady County, 50 Okl. 188, 150 P. 497; Re Hickman, 63 Okl. 14, 162 P. 176; Smith v. Board of Commissioners, 62 Okl. 120, 162 P. 463. After the 1911 Act had been declared unconstitutional in 1915 the 1916 Act was enacted to "take

supra, and State v. Board of County Commissioners of Creek County, 188 Okl. 184, 107 P.2d 542, wherein the Supreme Court of Oklahoma declared the 1937 Act unconstitutional and void. Subsequent to the final decision of the Supreme Court in Ivester v. State, supra (October 18, 1938), the 1939 Legislature enacted a statute textually identical in all material respects to the 1916 Act. Laws of 1939, p. 527, § 1, 68 O.S.A. 184d. This 1939 Act was declared unconstitutional by the Supreme Court of Oklahoma on January 30, 1940, in Peterson v. Roberts, 186 Okl. 496, 100 P. 2d 431, on the authority of Ivester v. State, supra, the court holding the 1937 and 1939 Acts indistinguishable on constitutional principles. It would seem therefore that if the 1939 Act is unconstitutional for the reasons announced in the Ivester case, the 1916 Act is also unconstitutional for the same reasons, insofar as it authorizes the Board to hear and determine allegations of excessive assessments.

■ Our attention has not been called to any case, and we have found none, wherein the constitutionality of the 1916 Act has been drawn in issue.[4] The Act has however received the attention of the Supreme Court of Oklahoma, and has been given a constitutional interpretation in cases not unlike the instant case. City of Enid v. Champlin Refining Co., supra; State v. State ex rel. Shull, supra; Barry v. Board of County Commissioners, supra; Morningside Hospital etc., v. Carmichael, 185 Okl. 48, 89 P.2d 958; Tulsa Exchange Co. v. Parkinson, Okl.Sup., 136 P.2d 694, decided March 30, 1943. It is now well established by the same decisions that before one may apply to the Board of County Commissioners for the reassessment of property for purposes of ad valorem taxation under the 1916 Act, supra, he must show good cause for not having appeared before the Board of Equalization to secure the relief sought, and where the order and proceedings of the Board of County Commissioners correcting the assessments do not reflect that the party applying for re-

lief under the Act showed good cause for not having appeared before the Board of Equalization, the Board of County Commissioners is powerless to correct the assessments by reducing the valuation. Morningside Hospital, etc., v. Carmichael, supra; Tulsa Exchange Co. v. Parkinson, supra. The record does not reflect the order of the Board of County Commissioners relied upon, hence we are unable to say whether it recited a showing of good cause for not having appeared before the Board of Equalization as required by the Act.

■ In the trial below, appellant introduced the testimony of the chairman of the Board of County Commissioners in 1937, and the attorney for the receiver at that time, to the effect that although neither the County Commissioner nor the attorney had any independent recollection that a showing of good cause was made, it was the custom in such cases to require "some showing as to why they did not appear before the Equalization Board before we granted any reduction." The trial court held this evidence insufficient to constitute a showing of good cause for not having attended the meeting of the Board of Equalization in the years 1931 and 1932 for the purpose of correcting the errors in the assessments. Based on this finding, the court denied the asserted validity of the orders of the Board for the taxable years 1931 and 1932 insofar as it was authorized by the 1916 Act. The findings of the court and its judgment thereon are not clearly erroneous and they will not be disturbed here. It therefore becomes neither necessary nor proper to decide the constitutional issue presented, and we leave that question to the Supreme Court of the State of Oklahoma where it rightfully belongs.

Appellees also interpose the three-year statute of limitations, 12 O.S.A. § 95(2), as a bar to the right asserted before the Board of County Commissioners, on the grounds that the right asserted was one created by statute accruing in the taxable year in which the property was erroneously assessed. See Barry v. Board of County Commissioners,.

---

the place of the 1911 Act". See State v. State ex rel. Shull, 142 Okl. 293, 286 P. 891, 897.

[4] In Ivester v. State, 183 Okl. 519, 83 P.2d 193, 197, the Supreme Court stated, "As to that class of taxpayers who could appear before the Board of County Commissioners by being able to show good

cause for not having appeared before the County Board of Equalization, as authorized by Sec. 12642, O.S. 1931 (1916 Act). * * * We may assume without deciding, that the tax based upon the assessments of this class does not constitute a 'liability' within the meaning of Sec. 53." Sec. 53, Art. 5, Oklahoma Constitution.

512

supra; Ivester v. State, supra. But in the view we take of the case, it is unnecessary to decide this point.

■■ This brings us to the question of the liability of the abstracter and its surety for the unpaid taxes against the property involved. As we have seen, the appellant relied upon an abstract of title furnished by the Abstract Company. Section 3610 O.S. 1921, Section 8513 O.S.1931, 1 O.S.A. § 1, as construed by the Oklahoma courts, provides that an abstracter and his statutory bondsman shall be liable for all damages accruing to any person by reason of any incompleteness, imperfections, or errors in any abstract furnished by the abstracter, Sackett v. Rose, 55 Okl. 398, 154 P. 1177, L.R.A.1916D, 820, and the statute requires a high degree of care on the part of the abstracter to show truthfully the state and condition of the title to the property which they undertake to abstract. Scott v. Jordan, 55 Okl. 708, 155 P. 498; Leeper v. Patton, 91 Okl. 12, 215 P. 421. The question then is whether the abstract was incomplete, imperfect, or erroneous, in respect to the matters it purported to reflect. The tax certificate and other pertinent data in the abstract gave assurance that according to the records in the office of the County Treasurer, the taxes for the years specified were paid, and no tax liens of any kind were outstanding. The County Treasurer testified that when on September 8, 1938, his records were corrected to reflect the order of the Board of County Commissioners adjusting and fixing the tax liability, and he accepted payment giving his receipt therefor showing that the taxes were paid in full, he would have refused to accept any further amounts as taxes. According to the County Treasurer's records, when the abstract was compiled and furnished, the ad valorem taxes for the years 1931, 1932 and 1935 had been fully paid. True they had been paid as adjusted by an order of the Board of County Commissioners, and it is also true that the abstract did not reflect the manner in which the tax assessments had been made and paid, nor did it reflect the proceedings before the Board of County Commissioners by which the liability therefor had been determined.

The trial court found and held that the universal usage, custom and practice of abstracters prevailing on October 4, 1939, in reflecting taxes against property abstracted, was to show the taxes merely as reflected by the records of the County Treasurer, and in no instance was it the usage, custom, and practice to reflect the levy, assessment, or proceedings of other public officials with respect thereto; that it was the custom to limit the tax report in abstracts, and certificates attached, to a simple, direct statement as to the payment of the taxes as reflected by the records of the County Treasurer. In our opinion, this also measures his statutory liability. The statute does not require an abstracter to include in an abstract a transcript of all instruments, records, and files pertaining to the property, such as administrative steps in making levies and assessments of taxes, or the administrative steps taken in making corrections in respect to values, and resulting reductions in taxes. It is clear that the abstract furnished to the appellant completely and accurately reflected all it pretended to reflect, and the abstracter is not liable for a subsequent correction of the records of the County Treasurer after the abstract had been compiled and furnished.

The judgment is affirmed.