Dear Oklahoma County District Attorney Lane II.
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Was the 2002 amendment to 68 O.S. 2001, § 2802.1(A)(4)(g), which excludes deeds in which "property is transferred from a person to a partnership, limited liability company or corporation of which the transferor or the transferor's spouse, parent, child, or other person related within the second degree of consanguinity to the transferor, or trust for primary benefit of such persons, are the only owners of the partnership, limited liability company or corporation," from being "title to the property [which] is transferred, changed, or conveyed to another person" under Article X, Section 8B of the Oklahoma Constitution, within the authority of the Legislature?
 2. If so, may this amendment be applied retroactively to prior tax years?
 I. Background
¶ 1 On November 5, 1996, voters approved State Question 676. This State question added Section 8B to Article X of the Oklahoma Constitution, which placed limits on increases to the fair cash value[1] of real property for ad valorem tax purposes. Article X, Section 8B states in pertinent part:
 Despite any provision to the contrary, the fair cash value of any parcel of locally assessed real property shall not increase by more than five percent (5%) in any taxable year. The provisions of this section shall not apply in any year when title to the property is transferred, changed, or conveyed to another person. . . . If title to the property is transferred, changed, or conveyed to another person, the property shall be assessed for that year based on the fair cash value as set forth in Section 8 of Article X of this Constitution. . . .
 The Legislature shall enact any laws necessary to implement the provisions of this section.
Id. (emphasis added). Article X, Section 8B was effective January 1, 1997.
 II. The 2002 Legislative Amendment To 68 O.S. Supp. 2002, § 2802.1(A)(4)(g) Is Unconstitutional.[2]
A. Initial Legislative Action
¶ 2 In 1997, the Legislature enacted Section 2802.1 of Title 68 to implement Article X, Section 8B of the Oklahoma Constitution. 1997 Okla. Sess. Laws ch. 304, § 3 (codified at 68 O.S. Supp.1997, § 2802.1[68-2802.1]). Section 2802.1 provides definitions for the terms used in the constitutional amendment, including "[a]ny person" and "[t]ransfers, change or conveyance of title." Id. § 2802.1(A). "Any person" is defined as "any person or entity, whether real or artificial, other than the present owner[.]"Id. § 2802.1(A)(1). "`Transfers, change or conveyance of title' means all types of transfers, changes or conveyances of any interest, whether legal or equitable." Id. § 2802.1(A)(4). However, the statute delineates several types of deeds that arenot to be considered transfers, changes or conveyances of title. Id. § 2802.1(A)(4) (a-i).
B. 2002 Amendment
¶ 3 In 2002, the Legislature added certain language to Section 2802.1(A)(4)(g). You ask if that amendment which adds other deeds not to be considered "transfers, change or conveyance of title" is constitutional. The relevant portion of the Section 2802.1, with the 2002 amendments underlined, now reads in pertinent part:
A. For purposes of implementing Section 8B of Article X of the Oklahoma Constitution:
. . . .
 4. "Transfers, change or conveyance of title" means all types of transfers, changes or conveyances of any interest, whether legal or equitable. However, "transfers, change or conveyance of title" shall not include the following:
a. deeds recorded prior to January 1, 1996,
b. deeds which secure a debt or other obligation,
 c. deeds which, without additional consideration, confirm, correct, modify or supplement a deed previously recorded,
 d. deeds between husband and wife, or parent and child, or any persons related within the second degree of consanguinity, without actual consideration therefor, or deeds between any person and an express revocable trust created by such person or such person's spouse,
 e. deeds of release of property which is security for a debt or other obligation,
 f. deeds of partition, unless, for consideration, some of the parties take shares greater in value than their undivided interests,
 g. deeds made pursuant to mergers of partnerships, limited liability companies or corporations, or deeds pursuant to which property is transferred from a person to a partnership, limited liability company or corporation of which the transferor or the transferor's spouse, parent, child, or other person related within the second degree of consanguinity to the transferor, or trust for primary benefit of such persons, are the only owners of the partnership, limited liability company or corporation,
 h. deeds made by a subsidiary corporation to its parent corporation for no consideration other than the cancellation or surrender of the subsidiary's stock, or
 i. any deed executed pursuant to a foreclosure proceeding in which the grantee is the holder of a mortgage on the property being foreclosed, or any deed executed pursuant to a power of sale in which the grantee is the party exercising such power of sale or any deed executed in favor of the holder of a mortgage on the property in consideration for the release of the borrower from liability on the indebtedness secured by such mortgage except as to cash consideration paid.
. . . .
C. The Oklahoma Tax Commission shall promulgate rules necessary to implement Section 8B of Article X of the Oklahoma Constitution and this section.[3]
Id. (new language underlined) (footnote added).
C. Unconstitutionality of the 2002 Amendment
¶ 4 As previously noted, the Constitution permits a 5% cap to be applied to limit increases to the fair cash value of real property for taxation purposes so long as title to the property is not "transferred, changed, or conveyed to another person." Okla. Const. art. X, § 8B (emphasis added). To the extent that any of the protected transactions added by the Legislature in the 2002 amendment are not "to another person,"[4] there would be no violation of the Constitution.
¶ 5 The second aspect of your question as to the constitutionality of Section 8B is whether the Legislature could limit the definition of "transfers, change or conveyance of title" to exclude certain deeds. Here, the issue is manifestly whether the Legislature has created an exception contrary to the clear language of the Constitution.
¶ 6 While the Constitution allows no exception for certain types of "transfers, change or conveyance of title," the Legislature undertook to create exceptions to the constitutional mandate. Specifically relating to your question, in 2002 the Legislature broadened the protected deeds in subsection (g)[5] in Section 2802.1 to include:
 [D]eeds made pursuant to mergers of partnerships, limited liability companies or corporations, or deeds pursuant to which property is transferred from a person to a partnership, limited liability company or corporation of which the transferor or the transferor's spouse, parent, child, or other person related within the second degree of consanguinity to the transferor, or trust for primary benefit of such persons, are the only owners of the partnership, limited liability company or corporation.
Id. (new language underlined). Thus, the issue is whether this 2002 legislative amendment was within the Legislature's authority under the Oklahoma Constitution.
¶ 7 Among the principles the Oklahoma Supreme Court has articulated to analyze whether a legislative act is constitutional, is: "[i]t is only where an act of the Legislature is clearly, palpably, and plainly inconsistent with the terms and provisions of the Constitution that the courts will interfere and declare such act invalid and void." Adwon v. Okla. RetailGrocers Ass'n, 228 P.2d 376, 379 (Okla. 1951) (quoting PawneeCounty Excise Bd. v. Kurn, 101 P.2d 614, 617 (Okla. 1940)).
¶ 8 An examination of the 2002 amendment shows the Legislature acted outside the purview of the authority given in the Constitution. The Constitution states: "The Legislature shall enact any laws necessary to implement the provisions of this section." Okla. Const. art. X, § 8B (emphasis added.). Implement is defined as "to carry out: accomplish, fulfill." Webster's Third New International Dictionary 1134 (3d ed. 1993). Nothing in the ordinary definition of implement anticipates the creation ofan exception to that which is to be carried out. Even construing any limitation on the Legislature's power strictly, as we must, we find no constitutional language which allows the Legislature to eliminate certain transactions from being transfers, changes or conveyances of title, if that transfer, change or conveyance is to another person.
¶ 9 Moreover, a deed is defined as: "any instrument or writing whereby realty is assigned, transferred, or otherwiseconveyed to, or vested in, the purchaser or, at his direction, any other person." 68 O.S. 2001, § 3201[68-3201](C)(2) (emphasis added). The Legislature's removal of certain deeds, which are written evidences of the transfer of legal or equitable interests, from the "transfers, change or conveyance of title" is clearly, palpably, and plainly inconsistent with the terms and provisions of Article X, Section 8B of the Oklahoma Constitution. 68 O.S. Supp. 2002, § 2802.1[68-2802.1](A)(4); see Adwon, 228 P.2d at 379.
¶ 10 Finally, the legislative action scrutinized here involved a transfer, change or conveyance of title. The ordinary definition of "title" is "the union of all the elements constituting legal ownership . . . the body of facts or events that give rise to the ownership of real or personal property." Webster's Third New International Dictionary 2400 (3d ed. 1993). "Title," though not explicitly defined in Section 2802.1 of Title 68, is implicitly defined. "`Transfers, change or conveyance of title' means all types of transfers, changes or conveyances ofany interest, whether legal or equitable." Id. § 2802.1(A)(4). Title, for our purposes, is thus ownership, whether legal or equitable, in real property pursuant to Article X, Section 8B of the Constitution. Any attempt by the Legislature to limit the types of transfers, changes or conveyances of any interest, either legal or equitable, is not supported by the clear language of Article X, Section 8B. The 2002 amendment to subsection (g) of Section 2802.1(A)(4) is "invalid and void." See Adwon,228 P.2d at 379.
 III. The 2002 Amendment Cannot Be Applied Retroactively To Prior Tax Years.
¶ 11 Because the determination of unconstitutionality is only advisory,[6] we must consider the second question you pose: whether Section 2802.1, as amended, can be applied retroactively to prior tax years to enable a taxpayer to seek a refund. An example may be useful.
¶ 12 In 1999, Mr. and Mrs. Smith bought property with a fair cash value of $100,000. In 2000, the county assessor valued the property at $150,000. However, its fair cash value, subject to assessment, was limited to a 5% increase, making the maximum assessed fair cash value $105,000, less than the value as assessed of $150,000. During 2000, Mr. and Mrs. Smith executed a deed of that real property to Smith Family LLC. The county assessor, in valuing the property for assessment for 2001, appraised the property at the fair cash value of $200,000. No five per cent limitation was applied to the increase to $200,000, because the transfer to the family LLC was considered to be "transferred, changed or conveyed to another person" which removed the 5% cap. Thus, the Smith Family LLC paid ad valorem taxes on $200,000. Is the Smith Family LLC entitled to have its fair cash value subject to taxation for 2001 reduced to no more than 5% above the 2000 fair cash value subject to taxation under the 2002 amendment? Is the Smith Family LLC entitled to have its taxes correspondingly reduced and refunded?
¶ 13 The question arises because House Bill 2904, which enacted the 2002 amendment to Section 2802.1, in part states:
 SECTION 7. NEW LAW A new section of law not to be codified in the Oklahoma Statutes reads as follows:
 The provisions of Sections 2 and 3 of this act shall be considered and construed to be a clarification of the law as it existed prior to the effective date of this act and shall not be considered or construed to be a change in the law as it existed prior to the effective date of this act.
2002 Okla. Sess. Laws, ch. 476. The section amending Section 2802.1(A)(4)(g) was contained in "Section 3" of this bill. Thus the amendment in question, adding deeds to family entities to those protected by the 5% limitation, was clearly intended by the Legislature to be a clarification to, not a change in, the law.
¶ 14 "Generally, statutes and amendments are to be construed as operating prospectively only, unless of course the legislature clearly expresses a contrary intent." Texas County Irrigation Water Res. Ass'n v. Okla. Water Res. Bd., 803 P.2d 1119, 1122
(Okla. 1990); see Sudbury v. Deterding, 19 P.3d. 856, 860 (Okla. 2001). A review of case law demonstrates that it is only when the Legislature has not expressed its intent that the Oklahoma Supreme Court has analyzed the Legislature's language to determine whether a statute is retroactive.[7] That is not the case before us. The Legislature has expressed its intent. However, the question here is whether the Legislature's use of the terms "clarification" and "not be considered or construed to be a change in the law" must be accepted without analysis of the substantive effect of the legislative action. 2002 Okla. Sess. Laws, ch. 476, § 7.
¶ 15 Because the 2002 amendment applies to ad valorem taxation, the linchpin of our determination of retroactivity is found in Article V, Section 53 of the Oklahoma Constitution, and two cases which interpret it; Ryan v. State, 228 P. 521 (Okla. 1924) and Ivester v. State, 83 P.2d 193 (Okla. 1938).
¶ 16 Article V, Section 53 of the Oklahoma Constitution provides:
 [T]he Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liabilities, or obligations of any corporation or individual, to this State, or any county or other municipal corporation thereof.
Id.
¶ 17 The two cases which follow expound upon the meaning of Article V, Section 53, providing conclusive guidance to us.
¶ 18 The issue before the Oklahoma Supreme Court in Ryan was occasioned by two events. The court had previously determined that any levy of ad valorem millage over 6 mills was void.Oklahoma News Co. v. Ryan, 224 P. 969, 977 (Okla. 1924). Subsequently, in 1924 the Oklahoma Legislature passed an act providing for correcting ad valorem tax rolls, and thus, under defined circumstances, a refund of ad valorem taxes to taxpayers.Ryan, 228 P. at 522. One of the circumstances was when a tax was an illegal levy. Id. at 523.
¶ 19 In 1924, the County Treasurer and County Assessor of Oklahoma County refused to comply with the requirements of the 1924 tax roll correction act to provide relief to taxpayers in Edmond, Oklahoma for an illegal levy over 6 mills made in 1923.Ryan, 228 P. at 521-22. A writ of mandamus was filed against the Treasurer and Assessor. Id. at 521. The District Court of Oklahoma County determined that the 9.5 mills levy made for the benefit of the general fund for Edmond for 1923 was illegal and granted the writ. The Assessor and Treasurer appealed. Id. at 522. The question before the court was whether the Oklahoma Constitution, Article V, Section 53, prohibited the correction of the 1923 tax rolls based on a statute enacted in 1924. Id. at 523.
¶ 20 The Oklahoma Supreme Court stated:
 However much this court might doubt the advantageous effect of the said [tax roll correction] act of the Legislature, we cannot change the will of the legislative branch of the government as manifested by an enactment, except where it is clearly in violation of some constitutional provision.
Ryan, 228 P. at 522-23. The court further held that Edmond could not create a valid debt, protected by Article V, Section 53, "except that which has sanction in the law." Id. at 523. Because the levy of 1923 was illegal, the 1924 Oklahoma Supreme Court decision in Oklahoma News Company could be applied retroactively through the 1924 enactment of the tax roll correction act to provide refunds of the 1923 ad valorem taxes.Id.
¶ 21 In light of Article V, Section 53 of the Oklahoma Constitution, in 1938, the court was once again called upon to review an action of the Legislature. Ivester, 83 P.2d 193. InIvester, the Legislature had passed a statute in 1937 which authorized the Board of County Commissioners "to hear and determine allegations of excessive assessments, mistakes or differences in the description of or value of lands or other property for the year of 1936, and prior years." Id. at 194. The issue was whether the Legislature could pass a statute causing reassessment of property for prior tax years. The court held that it could not. Id. at 196-97. The court determined that the prior years' ad valorem taxes had become "liabilities" under Article V, Section 53, which could not be extinguished by a subsequent Legislative act. Id.
¶ 22 Thus, we must determine whether Ryan or Ivester controls here. We find it is Ivester. The liability established in the hypothetical, set forth above, predicated on an assessment of $200,000 of fair cash value was not the result of an illegal levy, as was the case in Ryan. Thus, the liability became final, and under Article V, Section 53 of the Constitution could not be extinguished by retroactive application of the 2002 amendment by the Legislature to Section 4(g) of the Act, no matter what phrases were used by the Legislature to support a finding of retroactivity. The same reasoning articulated by the court in Ivester is relevant here:
 The effect of the 1937 act is to indirectly authorize the releasing or extinguishing, in part, of liabilities due the county and the other municipal subdivisions of the state, by authorizing the reduction of the assessed valuations which have become final. Such a result could not have been directly accomplished, by reason of Sec. 53; neither can it be done indirectly, as is attempted in this act.
Ivester, 83 P.2d at 197. The 2002 amendment to Section 2802.1(A)(4)(g) of Title 68 to increase the types of deeds which do not constitute transfers, may not be applied retroactively in violation of Article 5, Section 53 of the Oklahoma Constitution.
¶ 23 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. In 1997, a constitutional amendment was enacted limiting the increase in the fair cash value of real property subject to taxation to no more than 5% in any taxable year unless "title to the property is transferred, changed, or conveyed to another person." Okla. Const. art. X, § 8B.
 2. The Legislature, by excluding certain deeds from the definition of transfer, conveyance or change of title in the 2002 amendment, acted outside the purview of the authority given it in the Constitution. Okla. Const. art. X, § 8B. The Constitution merely permits the Legislature to implement Section 8B. Id. To remove certain deeds from "transfers, change or conveyance of title" by Legislative fiat is clearly, palpably, and plainly inconsistent with the terms and provisions of the Constitution. Adwon v. Okla. Retail Grocers Ass'n, 228 P.2d 376, 379 (Okla. 1951). The 2002 amendment to 68 O.S. 2001, § 2802.1(A)(4)(g) is unconstitutional.
 3. Article V, Section 53 of the Oklahoma Constitution prohibits the liability for ad valorem taxes validly assessed prior to the 2002 amendment to be extinguished by retroactive application of the 2002 amendment. 68 O.S. Supp. 2002, § 2802.1(A)(4)(g).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 GRETCHEN GROVER HARRIS Assistant Attorney General
[1] "Fair cash value" means the value or price at which a willing buyer would purchase property and a willing seller would sell property if both parties are knowledgeable about the property and its uses and if neither party is under any undue pressure to buy or sell and for real property shall mean the value for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preceding the applicable January 1 assessment date[.]
68 O.S. 2001, § 2802[68-2802](18).
[2] An Attorney General Opinion stating an act of the Legislature is unconstitutional should be considered advisory only, and is not binding until upheld by an action in district court. State ex rel. York v. Turpen, 681 P.2d 763, 767 (Okla. 1984).
[3] The Tax Commission has not promulgated any rules relevant to the questions asked here.
[4] Person is ordinarily defined as "a human being, a body of persons, or a corporation, partnership, or other legal entity that is recognized by law as the subject of rights and duties." Webster's Third New International Dictionary 1686 (3d ed. 1993) The legislature, in its 1997 statutory enactments to implement Section 8B, defined person similarly as: "`[a]ny person' means any person or entity, whether real or artificial. . . ." 68 O.S. Supp. 1997, § 2802.1[68-2802.1](A)(1).
[5] This Opinion is limited to the constitutionality of the 2002 amendment to subsection (g) of Section 2802.1(A)(4) of Title 68.
[6] See footnote 2.
[7] Case law indicates that amendments which are found to be clarifying and do not change the law, even though the Legislature has not expressed intent, may be retroactive. See, e.g., TexasCounty Irrigation, 803 P.2d at 1122. "A clarifying amendment is one which explains ambiguous law to more clearly express the legislative intent." Id. at 1122 n. 13.